**Richard Wayne MICHEL, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 05–91–00431–CR.**

Court of Appeals of Texas, Dallas.

March 31, 1992.

**65**

Russ Henricks, Dallas, for appellant.

Suzanne Kirby Perkins, Dallas, for appellee.

Before THOMAS, MALONEY and KAPLAN, JJ.

## OPINION

MALONEY, Justice.

A jury convicted Richard Wayne Michel of aggravated robbery and assessed a thirty-five year sentence, enhanced by a prior felony conviction. Appellant contends that (1) the trial court erred in submitting a jury charge on the law of transferred intent, (2) the trial court should have applied the abstract transferred intent instruction to the facts, and (3) the evidence was insufficient to prove allegations in the indictment. We overrule all of the points. We affirm the trial court's judgment.

## SUMMARY OF FACTS

Steve Currens was the assistant manager of a barbecue restaurant. He had just returned from a catering job and was outside of the restaurant's back door. A man with a sawed-off shotgun approached Currens and said, "Get inside, take me to the money." Currens also saw a second man at a distance. The back door was open because construction workers were remodeling the restaurant. Currens went into the restaurant through the back door, going under a PVC pipe held by two construction workers.

Currens quickly walked to the manager's office. When he entered the office, he shut the door. The door closed and automatically locked. Mike Sloan, the manager, was inside the office. Currens told Sloan that they were being robbed. Both men heard someone trying to open the office door. The man outside the door said, "Open the door or I'm going to blow it open." Currens was afraid that he would be shot, so he and Sloan stood behind the safe door to avoid injury. No one fired a gun or took any money. Currens could not identify either of the two men.

Sloan did not see either robber. Sloan was counting money when Currens came into the office and told him that they were being robbed. Both Sloan and Currens gave similar testimony on what happened after Currens entered the office. Sloan said that the "obvious implication" from the robber's statement was that he had a

gun. "It wasn't we are going to kick the door in or push the door in, you know. There was obviously a weapon involved of some sort." Sloan hid behind the safe door because he thought the robber would shoot through the door. He was surprised when there was no gunshot. He was in fear of imminent bodily injury or death.

Several construction workers were present at the time of the robbery. Ricky Hernandez, Ray Chavez, Kenneth Tutton, and Kenneth Tutton, Jr. testified to the events.

Hernandez was one of the construction workers carrying the PVC pipe Currens ducked under. Hernandez saw two men come in the building after Currens. Appellant carried a sawed-off shotgun. Appellant told the workers to get down and not look at him or he would shoot them. Hernandez was afraid he would die. He thought appellant was going to shoot everybody.

Hernandez said the second man was looking for money. He asked Hernandez and another worker if they could open the cash register. They told him that they did not know how to open the register.

Ray Chavez was the other construction worker carrying the pipe. He saw Currens enter the building followed by a man with a sawed-off shotgun. The armed man told Chavez to lay down. He hit Chavez with the gun's barrel. Chavez heard someone else talking but he never saw the other person. He could not identify either robber.

Kenneth Tutton saw Currens come into the restaurant followed by a man with a shotgun. Tutton hid. He heard, but did not see, another robber. He could not positively identify appellant as the man with the gun.

Kenneth Tutton, Jr. saw Currens come into the restaurant. When Tutton, Jr. turned around, he saw a man with a shotgun telling them to get down. The man with the gun "threatened me, you know, if I didn't turn around that he would kill me, you know, or something like he would blow my head off, or something, you know, go ahead and kill me." He believed the gunman would kill him. He could not identify the man with the gun. He also heard another robber but did not see him.

Richard Dodge, a Dallas police detective, recovered a latent fingerprint from the PVC pipe in the restaurant. It was appellant's fingerprint.

## SUFFICIENCY OF EVIDENCE

In his third point of error, appellant argues that the evidence was insufficient to prove that he committed the aggravated robbery alleged in the indictment. Appellant contends that the indictment alleged that appellant threatened and placed *Mike Sloan* in fear of imminent bodily injury and death. Appellant maintains the evidence was insufficient to prove that he was the person on the other side of the office door making threats against Sloan.

### A. Applicable Law

#### 1. Standard of Review

In reviewing a challenge to the sufficiency of the evidence, we evaluate all of the evidence in the light most favorable to the verdict. *Marroquin v. State,* 746 S.W.2d 747, 750 (Tex.Crim.App.1988). We determine if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Turner v. State,* 805 S.W.2d 423, 427 (Tex. Crim.App.), *cert. denied,* — U.S. —, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991). We use the same standard to review both direct and circumstantial evidence. *Belyeu v. State,* 791 S.W.2d 66, 68 (Tex.Crim.App. 1989), *cert. denied,* — U.S. —, 111 S.Ct. 1337, 113 L.Ed.2d 269 (1991). If the evidence supports an inference other than the guilt of the appellant, a finding of guilt beyond a reasonable doubt is not a rational finding. *Carlsen v. State,* 654 S.W.2d 444, 449–50 (Tex.Crim.App.1983) (op. on mot. for reh'g).[1] The State need not prove to a

---

1. The Court of Criminal Appeals of Texas over-        ruled *Carlsen* and eliminated the reasonable hy-

moral certainty that the circumstances presented exclude every hypothesis that another person may have committed the offense. The evidence must only exclude every reasonable hypothesis raised by the evidence that tends to exculpate the accused. The evidence is sufficient if the combined and cumulative force of all the incriminating circumstances warrant a conclusion of guilt. *Brandley v. State*, 691 S.W.2d 699, 703 (Tex.Crim.App.1985).

The jury judges the witnesses' credibility and the evidentiary weight. *Bonham v. State*, 680 S.W.2d 815, 819 (Tex.Crim.App. 1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985). The jury may accept or reject all or any part of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied*, 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988); *see* Tex.Code Crim. Proc.Ann. arts. 36.13, 38.04 (Vernon 1981 & 1979). We do not act as a thirteenth juror by reweighing the evidence. *Blankenship v. State*, 780 S.W.2d 198, 206–07 (Tex.Crim. App.1989) (op. on reh'g).

### 2. Elements of the Offense

A person commits aggravated robbery if, in the course of committing theft, and with intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death, and uses or exhibits a deadly weapon. Tex.Penal Code Ann. §§ 29.02(a)(2), 29.03(a)(2) (Vernon 1989 & Supp.1992). The indictment alleged that appellant intentionally or knowingly threatened or placed *Sloan* in fear of imminent bodily injury or death by using a deadly weapon. The State had to prove that allegation beyond a reasonable doubt. *See Taylor v. State*, 637 S.W.2d 929, 930 (Tex.Crim.App. [Panel Op.] 1982).

■ The trier of fact can infer criminal intent or knowledge from the words and conduct of the accused. *Brown v. State*, 704 S.W.2d 506, 507 (Tex.App.—Dallas 1986, pet. ref'd). A complainant does not

pothesis analytical construct for reviewing the sufficiency of the evidence in circumstantial evidence cases tried after November 6, 1991.

necessarily have to see the weapon to establish use of a deadly weapon. *See Webber v. State*, 757 S.W.2d 51, 54 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd). The State may rely on circumstantial evidence to establish use of a weapon. *Id.*

### 3. Law of Parties

■ An actor is criminally responsible as a party to an offense if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid another person to commit the offense. Tex.Penal Code Ann. §§ 7.01(a), 7.02(a)(2) (Vernon 1974). A conviction under the law of parties requires a showing that, at the time of the offense, the parties were acting together, each contributing to their common purpose. We consider events occurring before, during, and after commission of the offense to determine whether an actor was a party. *Burdine v. State*, 719 S.W.2d 309, 315 (Tex.Crim.App.1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987). Mere presence of an accused at the scene of an offense will not support a conviction under the law of parties, but it is a circumstance which, combined with other facts, may show that the accused was a participant. *Valdez v. State*, 623 S.W.2d 317, 321 (Tex.Crim.App.1981) (op. on reh'g).

### B. Application of Law to Facts

■ Hernandez saw appellant and the second man enter the restaurant together. Hernandez identified appellant as the robber with the shotgun. When appellant told Currens to take him to the money, Currens went immediately to the office where the manager was counting the cash receipts.

The second man was also looking for money. He even asked the construction workers if they could open the cash register. Several workers heard the second man saying things that indicated his participation in the robbery. Appellant and another man took part in commission of the offense.

*Geesa v. State*, 820 S.W.2d 154, 155, 159–61, 165 (Tex.Crim.App.1991).

The evidence showed that appellant was one of two parties to the offense. The jury was properly charged on the law of parties. The jury could have found that appellant threatened Sloan whether appellant or his companion made the threat.

No witness testified that it was appellant who threatened to shoot through the locked office door. However, the only reasonable hypothesis supported by the evidence is that one of the robbers, either appellant or the second man, made the threat. A rational trier of fact could have found, beyond a reasonable doubt, that appellant was criminally responsible for the threat as a party.

Sloan testified that he felt threatened and in fear of imminent bodily injury or death. The circumstances warranted his fear. After the robber threatened to blast through the door, Sloan and Currens hid behind the open safe door for protection.

■ Although Sloan never saw the shotgun, the jury could have agreed with Sloan's statement that the verbal threat to blast through or shoot through the door included the "obvious implication" of use of a firearm. The evidence was sufficient to show that a shotgun was used and exhibited during commission of the offense.

The jury also could have inferred that whoever made the threat intended to threaten anyone in the office, including Sloan. The jury could have determined that the speaker intended that anyone in the office who heard him should be influenced by his threat. We overrule the third point of error.

### TRANSFERRED INTENT

Appellant contends in his first point of error that the trial court erred in submitting an abstract jury instruction on transferred intent. He argues that the instruction improperly increased the scope of potential criminal culpability. In his second point of error, appellant maintains that the transferred intent instruction should have been applied to the facts of the case.

The State argues that appellant's objection preserved nothing for review. The State acknowledges that the jury charge on transferred intent was improper because the theory was not applied to the facts. However, the State maintains that because the court did not apply transferred intent to the facts, error, if any, was harmless.

### A. Applicable Law

■ To preserve error for appellate review, a party must timely object, stating the specific grounds for objecting unless the grounds are apparent from the context. Tex.R.App.P. 52(a). Our standard for reversal is governed by whether the complaining party made the proper objection. See Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App.1985) (op. on reh'g). Without a proper objection to the jury charge, we reverse only if the defendant suffered egregious harm. Id. With the proper objection, we reverse if the error was calculated to injure the rights of the defendant. Id. A defendant's rights are injured if he suffered some actual, not theoretical, harm. Arline v. State, 721 S.W.2d 348, 351 (Tex.Crim.App.1986). Any actual harm, regardless of degree, requires reversal. Id.

■ A charge to the jury should not authorize conviction on an improper theory. See Savant v. State, 544 S.W.2d 408, 408–09 (Tex.Crim.App.1976). An abstract jury instruction on transferred intent, without a corresponding application of that law to the facts of the case, does not place the theory of transferred intent before the jury. Garrett v. State, 749 S.W.2d 784, 802 (Tex. Crim.App.1988) (plurality op. on mot. for reh'g); see Jones v. State, 815 S.W.2d 667, 670 (Tex.Crim.App.1991); see also Mauldin v. State, 628 S.W.2d 793, 796 (Tex.Crim. App. [Panel Op.] 1982) (the defendant objected to abstract instruction on law of parties; because the legal theory was not applied to facts, the charge required jury to find defendant guilty solely on defendant's conduct).

### B. Application of Law to Facts

■ When appellant objected to the court's abstract instruction on transferred intent, the court interrupted his objection

by saying, "Your objection is noted and it will be left in the charge." The court's interruption demonstrated that he understood the objection based on the context. The trial court's words relieved appellant from further objection.

The court's failure to apply the theory of transferred intent to the facts increased the State's burden of proof—the State lost the benefit of a favorable legal theory. *See Garrett*, 749 S.W.2d at 802. The court's charge did not authorize the jury to convict on the law of transferred intent.

We reviewed appellant's insufficiency claim without giving the State the benefit of any transferred intent theory. We found sufficient circumstantial evidence to warrant the jury's finding that either appellant or his companion knowingly or intentionally threatened whoever was in the locked office.

We hold that appellant did not suffer any actual harm, and we overrule the first and second points of error.

We affirm the trial court's judgment.