COURT
OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-142-CR
 
DONNIE LEE GLASSEY                                                              
     
APPELLANT
V.
THE STATE OF TEXAS                                                             
  
     STATE
------------
FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY
------------
OPINION
------------
I. Introduction
Appellant Donnie Lee Glassey appeals his
jury conviction for the offense of attempted capital murder. Appellant raises
three issues for our review: (1) that the evidence was legally insufficient to
support his conviction; (2) that the trial court abused its discretion by
failing to grant two motions for mistrial; and (3) that the trial court erred in
failing to charge the jury on the law of attempted murder. We will affirm.
II. Factual and
Procedural Background
Appellant was indicted for the offense of
the attempted capital murder of Susan Burns by strangulation with a cord during
the course of committing or attempting to commit retaliation. See Tex.
Penal Code Ann. § 19.03(a)(2) (Vernon 2003).(1)
The indictment also included an
enhancement notice concerning Appellant's prior convictions for the federal
felony offenses of mail fraud and making and signing a false tax return. At
trial, the State offered testimony that Appellant was the leader of a theft
ring. Among others, DeeDee Schneider, Darren Soltier, Garla McCullough, Joe
Briton, and Susan Burns were involved in the theft ring. Kendrick Chavez, who
was known as K Dog, supplied them with cocaine.
Appellant was suspected of being involved
in a robbery at a Boot Town store in Hurst; however, Burns and Briton were
arrested for the robbery. Appellant bonded them out of jail. Burns testified
that she told Appellant that he needed to turn in the people who actually
committed the robbery because she was not going to jail for a crime that she did
not commit. Burns further testified that she told Appellant that she was going
to tell the police, to which she said Appellant replied that "[she] had
better keep [her] mouth shut."
K Dog testified that, during the first
week of December 2000, Appellant told him that he wanted to kill Burns, but K
Dog did not think that Appellant was serious. Appellant asked K Dog at least
three times to kill Burns, offering to pay him between $1,000 and $20,000.
Ultimately, K Dog refused to kill Burns; however, he testified that he overheard
conversations between Calvin Walker and Appellant in which Appellant discussed
killing Burns with poisoned crack cocaine and antifreeze. According to K Dog,
Walker told Appellant that he "could do it with his bare hands." K Dog
recalled Appellant and Walker discussing a price of $1,000.
Schneider testified that, to prevent Burns
and Briton from implicating Appellant in the robbery, Appellant wanted to kill
Burns and Briton. According to Schneider, Appellant planned to kill them by
giving them Gatorade mixed with antifreeze and crack cocaine cooked with rat
poison. Schneider testified that on December 7 Appellant called K Dog and Burns
and made plans to meet them at a local motel with beer, pizza, and crack
cocaine. Schneider called the police because she was concerned that Appellant
was serious about killing Burns.
During the first week of December 2000,
Burns was staying with Briton and her black Labrador retriever, Harley, in room
127 at the Caravan Motel. On December 5, Briton left because he was scared of
Appellant. Burns testified that on December 7 she spoke on the phone with
Appellant, at which time he told her that he wanted to kill himself. Feeling
sorry for Appellant, Burns invited him over to her motel room to drink beer, eat
pizza, and get high on cocaine.
K Dog admitted to going to the motel where
Burns was staying on December 7, 2000 with Appellant and Walker, but K Dog
testified that he left the room "[b]ecause if they were really going to do
what they had planned on doing, [he] didn't want to have any part of it. [He]
didn't want to be there." K Dog also corroborated Schneider's testimony
that Appellant wanted to kill Burns because she was going to testify for the
State against Appellant for a robbery they had committed together.
Burns testified that Appellant came to her
room with K Dog and another man, who was later identified as Walker. Burns
testified that Walker kicked Harley across the room and then asked if he would
bite. Appellant suggested that K Dog take Harley to the store, but Burns
testified that she would not allow K Dog to take her dog. Burns testified that
Appellant said, "I'll take him outside for a walk," and he went out
the door with Harley.
As Appellant went out the door, Burns
testified that Walker punched her in the side of her face and knocked her to the
ground. Burns recalled that as she was being punched, Appellant turned around
and smiled. Burns stated that while she was on the ground she saw Walker coming
down at her with a cord. She testified that she got her hand in between the cord
and her throat. She was struggling with it and screaming, pulling so hard that
the cord broke.
Burns testified that Walker twisted her
neck to try to break it, jumped on her back, and broke her ribs. Eventually,
Walker got the cord around her neck again, but this time Burns was unable to get
her hand underneath it. Burns testified that she was panicking and thought that
he was killing her. She recalled having an out of body experience in which she
felt herself up in the corner of the room looking down on herself, thinking,
"do something . . . [t]his man is killing you."
Suddenly, she heard banging on the door,
and Walker let go of the cord and ran out of the door. Burns testified that she
"snapped [back] in[to] [her] body" and was finally able to breathe
again. Burns told the jury that she was bruised all over and there was a cut on
the side of her neck that "looked like somebody had taken a sharp, dull
something and just ripped [her] neck open all the way through."
During the attack, Sergeant Mark Simpson
went to the Caravan Motel because of Schneider's earlier conversation with the
police. As he approached room 127, Sergeant Simpson saw Appellant standing
outside with a black dog that appeared to be the size of a Labrador retriever.
Sergeant Simpson asked Appellant whether he was Briton and whether Burns was
inside the room. Appellant responded that he was not Briton, but he confirmed
that Burns was inside. As Sergeant Simpson was about to ask another question, he
heard the sound of a muffled cry and something being slammed against a wall from
within the room. Sergeant Simpson also testified that he heard another noise,
which sounded like a "cat wailing."
Immediately, Sergeant Simpson began to
beat on the door, identified himself as a police officer, and demanded entry. At
that point Appellant let go of the dog; banged on the window; yelled, "[T]he
cops are here"; and began running from the motel. A man, later identified
as Walker, quickly emerged from the room and started running in the opposite
direction from Appellant.(2) Because Sergeant
Simpson heard more screams from inside the room, he did not pursue either man
but went inside to see if the assault was continuing.
In the room, Sergeant Simpson saw Burns on
her hands and knees with what appeared to be a ligature extending down from both
sides of her neck. Sergeant Simpson testified that there was "free-flowing
blood coming down from the left side of her head, . . . there were ligature
marks around her neck," and she was a "very deep, deep purplish
color." The police later recovered pieces of an electrical cord, which
Burns testified her attacker used as he attempted to strangle her. Sergeant
Simpson opined that, if used to put around a person's neck to strangle or choke
someone, the recovered ligatures constituted a deadly weapon.
Appellant took the stand in his own
defense, and he denied plotting and participating in Burns's attempted murder.
Appellant admitted that he took Harley outside of the room and stood beside the
window. Appellant, however, denied knowing Walker, and he testified that he
"never said a word to this Calvin Walker, period." Appellant testified
that he was being set up by the police and the other members of the theft ring
and that the reason he fled the scene was that he was on federal probation and
had crack cocaine on him. After considering all of the testimony and evidence
presented, the jury found Appellant guilty, made a deadly weapon finding, found
that he had one prior felony conviction, and assessed his punishment at forty
five years' confinement.
III. Legal
Sufficiency
In his first issue, Appellant argues that
the evidence was legally insufficient to support the verdict. Specifically,
Appellant complains that the evidence was legally insufficient because (1) the
State did not prove that he was the person who caused injury to Burns by choking
or strangling her with a cord and (2) the State did not prove that he solicited,
encouraged, or aided Walker in the attempted murder of Burns. We disagree.
Appellant was charged with the attempted
capital murder of Burns, and the State proceeded on a theory of party liability.
See Tex. Penal Code Ann. § 7.02(a)(2) (Vernon 2003). An actor is
criminally responsible as a party to an offense if, acting with intent to
promote or assist in the commission of the offense, he solicits, encourages,
directs, aids, or attempts to aid another person to commit the offense. Id.
The evidence is sufficient to support a conviction under the law of parties
where the actor is physically present at the commission of the offense and
encourages the commission of the offense either by words or other agreement. See
Burdine v. State, 719 S.W.2d 309, 315 (Tex. Crim. App. 1986), cert.
denied, 480 U.S. 940 (1987); Cordova v. State, 698 S.W.2d 107, 111
(Tex. Crim. App. 1985), cert. denied, 476 U.S. 1101 (1986).
The evidence must show that, at the time
of the offense, the parties were acting together, each contributing to their
common purpose. See Burdine, 719 S.W.2d at 315. In determining whether
a defendant participated in an offense as a party, the court may examine the
events occurring before, during, and after the commission of the offense, and
may rely on actions of the defendant that show an understanding and common
design to commit the offense. See id.; Tippitt v. State, 41
S.W.3d 316, 322-23 (Tex. App.--Fort Worth 2001, no pet.). Although mere presence
of the accused at the scene of the offense will not support a conviction, it is
a circumstance which, combined with other facts, may show that the accused was a
participant. See Beardsley v. State, 738 S.W.2d 681, 685 (Tex. Crim.
App. 1987); Valdez v. State, 623 S.W.2d 317, 321 (Tex. Crim. App.
[Panel Op.] 1981) (op. on reh'g); Michel v. State, 834 S.W.2d 64, 67
(Tex. App.--Dallas 1992, no pet.).
On appeal, Appellant directs us to his
trial testimony in which he claimed that he was being set up by the police and
the members of the theft ring. Appellant argues that the evidence was legally
insufficient to support his conviction for the attempted capital murder of Burns
under party theory liability because (1) we cannot consider the testimony of
Schneider and K Dog, who he asserts were accomplices as a matter of law and (2)
he was merely present at the scene of Burns's attack. We disagree with
Appellant's assertion that we cannot consider the testimony of Schneider or K
Dog. While Schneider and K Dog may have been involved with drugs and Appellant's
theft ring, they were not accomplices to the attempted capital murder of Burns. See
Blake v. State, 971 S.W.2d 451, 454-55 (Tex. Crim. App. 1998) ("[A]
person is an accomplice if there is sufficient evidence connecting [him or her]
to the criminal offense as a blameworthy participant."); Barnes v.
State, 56 S.W.3d 221, 230 (Tex. App.--Fort Worth 2001, pet. ref'd) ("A
witness is not deemed an accomplice because he knew of the crime but failed to
disclose it, or even concealed it.") (citations omitted).
We have reviewed the record extensively,
and under the applicable standard of review, giving due deference to the fact
finder's determinations, we hold that the evidence-particularly that of Burns,
as well as Schneider and K Dog-was sufficient for a rational jury to conclude
beyond a reasonable doubt that Appellant was guilty of the offense and therefore
was legally sufficient to support Appellant's conviction. See Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Burden v.
State, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001). Accordingly, we overrule
Appellant's first issue.
IV. Motions for
Mistrial
In his second issue, Appellant contends
that the trial court abused its discretion by failing to grant two motions for
mistrial. Appellant argues that he was harmed by the introduction of prejudicial
extraneous matters because the State tried to show that he was a criminal in
general. We disagree.
We review a trial court's denial of a
motion for mistrial under an abuse of discretion standard. See Ladd v. State,
3 S.W.3d 547, 567 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1070
(2000). Mistrials are an extreme remedy for curing prejudice occurring during
trial. Bauder v. State, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996).
They ought to be exceedingly uncommon and employed only when less drastic
remedies are inadequate to the task of removing residual prejudice. Id.
A mistrial is only required when the impropriety is clearly calculated to
inflame the minds of the jury and is of such a character as to suggest the
impossibility of withdrawing the impression produced on the minds of the jury. Hinojosa
v. State, 4 S.W.3d 240, 253 (Tex. Crim. App. 1999).
Ordinarily, a prompt instruction to
disregard will cure any prejudicial effect associated with an improper question
and answer. Ovalle v. State, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000);
Faulkner v. State, 940 S.W.2d 308, 312 (Tex. App.--Fort Worth 1997,
pet. ref'd) (op. on reh'g). To determine whether a curative instruction is
sufficient to cure prejudice from an improper question or answer, we must look
at the facts of each case. Hernandez v. State, 805 S.W.2d 409, 414
(Tex. Crim. App. 1990), cert. denied, 500 U.S. 960 (1991). Further, we
are to presume the jury will follow the court's instructions. Colburn v.
State, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998).
We will address each motion for mistrial
in turn. Appellant first challenges the denial of his motion for mistrial
occurring in the following exchange between the State and K Dog on redirect
examination:

        
 [State]: He was just asking you about between December 7th and
 December 18th and going to talk to the police. And I want to ask
 you, did you receive any threats during that period of time?
          [K
Dog]: Between the time of the incident happening?
         Q.
Yes.
         A.
And the time I talked with the police?
         Q.
Yes.
         [Defense
Counsel]: Objection, 404(b).
         A.
Yes.
         [Defense
Counsel]: Objection, 404(b).
         THE
COURT: I'm going to sustain because of the breadth of the question.
         .
. . .
         [Defense
Counsel]: In light of the Court's sustaining, he did answer. We'd ask that the
jury be instructed to disregard the last answer.
        THE COURT: You'll disregard the last
answer.
         [Defense
Counsel]: As the law requires, we request a mistrial.
        THE
COURT: Denied.

 Here, the trial court immediately instructed the jury to disregard K Dog's
answer. As is apparent from the court's response that the State's question was
overly broad, there was no indication who threatened K Dog, and the State made
no attempt to impute these threats to Appellant. Additionally, the State did not
refer to any threats directed at K Dog at any other time during the trial. Thus,
even if the State's question was improper, we can see no reason why the
instruction to disregard failed to cure any prejudicial effect the question
might have had. See Ovalle, 13 S.W.3d at 783; Faulkner,
940 S.W.2d at 312. We therefore cannot say that the trial court abused its
discretion when it denied Appellant's motion for mistrial.
Appellant also challenges the denial of
his motion for mistrial from the following portion of his own cross-examination:

        
 [State]: Were you in on the theft ring or not?
          [Appellant]:
I bought merchandise.
         Q.
Were you in on the theft ring or not?
         A.
Yes, I bought merchandise.
         Q.
So, yes, you were part of that theft ring, and Boot Town was also part of that
theft ring, correct?
         A.
Boot Town was not part of me, no.
         Q.
You committed that offense, though?
         A.
I did not.
         Q.
You committed a Wal-Mart theft two days after that?
       
[Defense Counsel]: Objection, 404, Judge.
         THE
COURT: Sustained.
         [Defense
Counsel]: Ask the Court to instruct to disregard that one.
         THE
COURT: You are instructed to disregard any comment about an additional offense.
         [Defense
Counsel]: As the law requires, I ask for a mistrial.
         THE
COURT: That's denied.

 
Appellant failed to preserve error
concerning this ruling because evidence of Appellant's involvement with the
Wal-Mart theft came into evidence without objection during Burns's testimony. See
Tex. R. Evid. 103(a); Fuentes v. State, 991 S.W.2d 267, 273 (Tex. Crim.
App.), (holding that to preserve error, the objecting party must continue to
object each time the objectionable evidence is offered), cert. denied,
528 U.S. 1026 (1999) ; Garcia v. State, 6 S.W.3d 765, 767 (Tex.
App.--Fort Worth 1999, pet. ref'd) (stating general rule that when a defendant
objects to evidence at trial but also allows substantially the same evidence to
be admitted without objection, any error in admitting the objected-to evidence
is waived) (citing Leday v. State, 983 S.W.2d 713, 718 (Tex. Crim. App.
1998)). When asked whether she ever told the police about the knowledge she was
gaining about the theft ring, Burns testified, "Well, I didn't
-- we didn't exactly tell the police, Joe was arrested at a Wal-Mart for
stealing, and he was involved with [Appellant], and the
police questioned him at that point." [Emphasis supplied.]
Because Appellant waived his right to complain of any impropriety in the State's
question concerning the Wal-Mart theft, we hold that the trial court did not
abuse its discretion in denying Appellant's motion for mistrial. We therefore
overrule Appellant's second issue.
V. Jury Charge
In his third issue, Appellant complains that the trial court erred in
failing to charge the jury on the law of attempted murder. In response, the
State points out that Appellant denied any involvement in the assault and
claimed he was set up by a conspiracy of thieves, dope dealers, and the police.
Thus, the State argues that the trial court properly refused to include a charge
on attempted murder because there was no evidence that if Appellant was guilty
at all, he was guilty of only attempted murder.
To determine whether a jury must be charged on a lesser included
offense, we apply a two-step analysis. Moore v. State, 969
S.W.2d 4, 8 (Tex. Crim. App. 1998). The first step is to decide whether the
offense is a "lesser included offense" as defined in article 37.09 of
the code of criminal procedure. See Tex. Code Crim. Proc.
Ann. art. 37.09 (Vernon 1981); Moore, 969 S.W.2d at 8. The
second step requires an evaluation of the evidence to determine whether there is
some evidence that would permit a rational jury to find that the defendant is
guilty only of the lesser offense, and not of the greater. Lofton
v. State, 45 S.W.3d 649, 651 (Tex. Crim. App. 2001); Moore,
969 S.W.2d at 8.
The evidence must be evaluated in the context of the entire record. Moore,
969 S.W.2d at 8. There must be some evidence from which a rational jury could
acquit the defendant of the greater offense while convicting him of the lesser
included offense. Id. The court may not consider whether
the evidence is credible, controverted, or in conflict with other evidence. Id.
If there is evidence from any source that negates or refutes the element
establishing the greater offense, or if the evidence is so weak that it is
subject to more than one reasonable inference regarding the aggravating element,
the jury should be charged on the lesser included offense. Schweinle
v. State, 915 S.W.2d 17, 19 (Tex. Crim. App. 1996); Saunders
v. State, 840 S.W.2d 390, 391-92 (Tex. Crim. App. 1992).
The State does not dispute that attempted murder is a lesser included
offense of the offense charged. Thus, the only issue is whether there is some
evidence that would permit a rational jury to find that Appellant is guilty only
of the lesser offense, and not of the greater. The State argues that Zamora
v. State, 998 S.W.2d 290 (Tex. App.--Fort Worth 1999, pet ref'd) controls
this issue.
In Zamora, the defendant was convicted of capital
murder, and her sole issue on appeal was whether she was entitled to a lesser
included charge of murder. Id. at 291. Zamora was charged
as a party to the capital murder of Adrianne Jones. Id. at
292. At trial, Zamora took the stand in her own defense and testified that she
only wanted to talk to the victim on the night of her murder and that "she
neither intended nor planned to kidnap, murder, or harm Jones in any way." Id.
We stated that, for Zamora to be entitled to the lesser included
charge, "the jury would have to dissect Zamora's blanket assertion of
innocence to believe her denial to the kidnaping, yet disbelieve her denial to
the murder." Id. at 293. In holding that there was no
rational basis for the jury to have rejected the aggravating offense of
kidnaping and to have found Zamora guilty only of murdering Jones, we stated,
"[I]t would be irrational in this case for the jury to simultaneously
believe that Zamora participated in the murder but not the kidnaping because
Jones's kidnaping was a prelude to her murder." Id.
at 293.
Here, Appellant testified that Schneider-not Burns-committed the Boot
Town robbery and that he was going to "try to help get the charges dropped
off [Burns and Briton]." Appellant further testified that he had nothing to
do with the attack on Burns. He testified that he did not know Walker and that
he had never spoken to him. Rather, Appellant testified that he went to Burns's
motel room to provide her beer, pizza, and crack cocaine. He testified that
Sergeant Simpson, Hurst police officer Wayne Price, K Dog, Burns, and Schneider
were all mad at him and set him up.
For Appellant to be entitled to the lesser included charge of attempted
murder, it had to be possible for the jury to rationally reject the offense of
attempted capital murder by finding that Appellant committed only the offense of
attempted murder, but not the aggravating element of retaliation. See
Tex. Penal Code Ann. § 19.03(a)(2); Lofton, 45 S.W.3d at
652; Zamora, 998 S.W.2d at 293. Similar to the Zamora
jury, the jury in this case would have had to dissect Appellant's denial of any
involvement with Burns's attack to believe his denial to the retaliation, yet
disbelieve his denial to the attempted murder. See Zamora,
998 S.W.2d at 293. Such a result is not supported by any evidence in the record.
We hold that the record does not reflect the existence of any evidence
that would permit a rational jury to find that Appellant is guilty only of the
lesser offense, and not of the greater. See Moore, 969
S.W.2d at 8. Accordingly, the trial court did not err by denying the requested
charge on the lesser included offense of attempted murder. We overrule
Appellant's third issue.
VI. Conclusion
Having overruled all three of Appellant's issues, we affirm the trial
court's judgment.
 
                                                             
        
ANNE GARDNER
                                                             
         JUSTICE
 
PANEL B: DAUPHINOT, GARDNER, and WALKER, JJ.
PUBLISH
DELIVERED: August 29, 2003

1. Section 19.03(a)(2) states, in pertinent part, "A
person commits [capital murder] if he commits murder as defined under Section
19.02(b)(1) and the person intentionally commits the murder in the course of
committing or attempting to commit . . . retaliation." See id.
2. In a separate opinion, we affirmed Calvin Walker's
conviction for the offense of attempted murder. See Walker v. State,
No. 2-01-518-CR, 2003 WL 21357570 (Tex. App.--Fort Worth June 12, 2003, no pet.
h.) (not designated for publication).