**MODIFY and AFFIRM; and Opinion Filed June 16, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00965-CR

### ANTWAUNN DOMINICK DISMUKE, Appellant

### V.

### THE STATE OF TEXAS, Appellee

### On Appeal from the 291st Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. F13-51584-U

## MEMORANDUM OPINION

Before Justices Lang, Myers, and Brown
Opinion by Justice Brown

Antwaunn Dominick Dismuke appeals his conviction for aggravated robbery with a deadly weapon. After finding appellant guilty and one enhancement paragraph true, the trial court assessed punishment at forty years' imprisonment. In a single issue, appellant contends the evidence is legally insufficient to sustain his conviction. We modify the trial court's judgment and affirm as modified.

EVIDENCE PRESENTED

Raymond Hanks testified he went to a gentlemen's club around midnight on January 17, 2013. A woman came into the lobby area and said she had a fight with her boyfriend and asked to use a phone. The club refused to let her come inside to use a phone, so Hanks gave the

woman his cell phone. The woman said she had recently moved to the area with her mother and needed a ride home. Hanks drove the woman to an apartment complex. They exchanged telephone numbers and he returned to the club. About thirty minutes later, the woman called Hanks's cell phone and asked for a ride to a friend's house. She said no one answered the door at the location where he had left her. Hanks testified he picked the woman up at a convenience store and drove her to a nearby apartment complex. The woman asked him to wait while she went to the friend's apartment "to get some things."

Hanks testified that when the woman returned to his car, she held open the front passenger door and "let three men rob" him. The woman ran to another vehicle as a juvenile and one of the men rushed to the driver's side of Hanks's vehicle with their guns drawn. A third man reached through the passenger side door, grabbed a leather coat and Gucci bag from the back seat, then ran to the same vehicle as the woman. The juvenile hit Hanks in the mouth with a gun and demanded money and a second man stood slightly behind the juvenile holding a gun with a laser sight on it to Hanks's head. Hanks testified he believed appellant was the man holding the laser-sight gun because, although he did not see appellant's face, he recognized appellant's voice when appellant demanded his money and threatened to shoot him. Hanks testified he knew appellant from "around the neighborhood." Hanks gave the men approximately $420 cash. After the men took the money, they ran to the same car to which the woman and the third man had run. Hanks got out of his car and fired several bullets at the suspect vehicle with his own gun. Hanks testified he has a concealed handgun license. After the suspects fled the scene, Hanks drove a short distance to his father's house and called the police.

Quanjanae Turner testified she joined appellant and two others in planning to "hit a lick" on the night of the robbery. Turner testified appellant's friend John had a car, so he drove them around the Webb Chapel area. A juvenile named Val was in the car with them. Turner testified appellant directed John to a strip club, and appellant instructed Turner to go inside and pretend

she had an argument with her boyfriend and needed a ride home. They would follow and rob the man. Turner testified she went in the club and "told her story." Hanks offered to take her home. Turner directed Hanks to an apartment complex, they exchanged telephone numbers, and then he drove off. When Turner realized the others were not there, she called appellant and learned she had gone to the wrong complex. When appellant and the others picked her up, they drove to a convenience store where appellant instructed her to call Hanks and say no one answered the door for her, so she needed another ride.

Turner testified Hanks agreed to give her another ride. Hanks picked her up at the convenience store and drove her to the designated apartment complex. She asked him to wait for her to go get some things from a friend's apartment. Turner went to an area between the buildings where she met appellant, John, and Val. Appellant told her to call Hanks to get him out of the car. When she called him, he had driven around the complex because he said a patrol car had driven by and he had been parked in a fire lane. Hanks asked Turner to come on back to the car so they could go. Appellant told Turner to go back to Hanks's car and pretend to get in. Turner did as she was instructed. When she returned to the car, she opened the front passenger door and held it open. Appellant and Val rushed to the driver's side with their guns pointed at Hanks. John grabbed items from the car and ran back to his own car. Turner testified she ran to John's car and got in the backseat behind John. After a few seconds, appellant and Val jumped into the car. Before they could leave, Hanks began shooting at them. A bullet hit Turner in the leg. Val leaned out the passenger window and fired his gun, but Turner did not see at whom he was aiming. When a patrol car drove behind them, both appellant and Val threw their guns out the car window.

Dallas police officer Russell Barrett testified he was driving an unmarked car when he observed a vehicle with a flat tire driving fast down the street. When he began following the vehicle, the front passenger leaned out the window and fired gunshots at him. Barrett radioed for

uniformed officers, who stopped the suspect vehicle. Officer Jeffrey Eggleston testified he answered the call from Barrett and pulled over the suspect vehicle. Eggleston testified there were four people in the vehicle: appellant sat in the rear passenger seat on the right; a woman who had been shot in the leg sat in the rear passenger seat on the left; a juvenile sat in front passenger seat; and the owner of the vehicle sat in the driver's seat. The vehicle had numerous bullet holes in it. Eggleston testified he retrieved items that belonged to Hanks from the back seat area of the vehicle, including a leather coat, a Gucci bag, and a pair of Gucci sunglasses.

Detective Michael Mendez testified he interviewed John, the owner of the suspect vehicle, Turner, and appellant. He did not interview the juvenile. A DVD of appellant's interview was admitted into evidence. During the interview, appellant initially denied knowing anything about the robbery, stating he and Turner were with John and Val at a "taco place" when Turner began arguing with a man. The man started shooting at their car when they left the scene. When they saw a car following them, they assumed the occupants were friends of the man, so Val leaned out the window and shot at them with his gun. When they realized the police were behind them, they stopped.

The videotaped interview also showed appellant being questioned by Detective Laboda. During that interview, appellant said Val was the person who said "let's go get some money" when they were all in the car. During the interview, appellant said that although he did not stop Val or John from robbing Hanks, he did not plan the robbery with them. Appellant said he was simply in John's car when Val planned the robbery, and he stayed next to John's car when Val and John rushed up to Hanks's vehicle. Appellant told Laboda that he saw Val grab the bag from Hanks's vehicle and bring it to John's car, but appellant did not know how Hanks's coat and bag got into the back seat. Appellant also told Laboda that he had a .380-caliber pistol with him at the time of the robbery, but he did not shoot his gun and he tossed it out the window even before Val fired his gun at an approaching car.

-4-

Mendez testified that based upon his interviews with three of the four suspects, he believed appellant, Turner, John, and Val had conspired to commit a robbery at the club. Turner lured the victim to the chosen spot and the others robbed him at gunpoint. Mendez testified officers recovered two guns on the ground less than three-hundred feet from the vehicle in which appellant was riding: a .380-caliber pistol with a laser sight on it and a .25-caliber handgun.

APPLICABLE LAW

In reviewing a challenge to the sufficiency of the evidence, we examine all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.). We are required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Jackson*, 443 U.S. at 326.

The State was required to prove beyond a reasonable doubt that appellant, in the course of committing theft, intentionally or knowingly threatened or placed Raymond Hanks in fear of imminent bodily injury or death, and appellant used or exhibited a deadly weapon, a firearm, during the commission of the offense. *See* TEX. PENAL CODE ANN. § 29.03(a) (West 2011). A firearm is a deadly weapon per se. *See id.* § 1.07(a)(17).

The trial court could find appellant guilty as a principal actor to the offense, guilty as a party to the offense, or not guilty. *See* TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2003). A person is criminally responsible as a party if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. *See id.* § 7.01(a). A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he aids the other person in committing the offense. *See id.* § 7.02(a)(2). In determining whether the accused is guilty as a

-5-

party, the fact finder may consider events occurring before, during, and after commission of the offense. *Michel v. State*, 834 S.W.2d 64, 67 (Tex. App.—Dallas 1992, no pet.).

DISCUSSION

Appellant contends the evidence is legally insufficient because Hanks never saw appellant at the robbery scene and never saw appellant with a gun. Appellant asserts that because the accomplice testimony was not corroborated and merely connected him to the accomplice and other suspects, but not to the offense itself, the evidence is insufficient.

Article 38.14 of the code of criminal procedure provides that a defendant cannot be convicted of an offense upon the testimony of an accomplice without other corroborating evidence that tends to connect the defendant to the offense. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). To determine whether there is sufficient corroborating evidence, the proper appellate standard is whether a rational fact finder could conclude that the non-accomplice evidence tends to connect appellant to the offense. *See Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008). Non-accomplice evidence must not be taken as isolated facts, but rather considered together as a whole, and if the force of the evidence is such that it tends to connect the defendant to the offense, then it is sufficient. *See Simmons v. State*, 282 S.W.3d 504, 511 (Tex. Crim. App. 2009).

Here, the non-accomplice evidence is more than sufficient to meet the corroboration requirement. Hanks testified he knew appellant from the neighborhood and, although he did not see the second gunman's face, Hanks recognized the gunman's voice as appellant's. Hanks testified appellant pointed a gun with a laser sight on it at his head and demanded money. Eggleston testified appellant was sitting in the back seat of a vehicle that had property belonging to Hanks in the back seat. Mendez testified officers recovered two firearms near the vehicle that appellant was riding in, including a .380-caliber pistol with a laser sight on it and a .25-caliber

handgun. In appellant's videotaped interview with Laboda, appellant states he owned a .380-caliber pistol that he tossed out of the vehicle before the police stopped the vehicle.

Although appellant told Laboda that he had no part in planning or committing the robbery, he admitted he heard Val plan to rob someone, and Val was the person who committed the robbery at gunpoint. It was the trial judge's role, as the fact finder, to reconcile conflicts in the evidence. *See Swearingen v. State*, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003).

Viewing the evidence under the proper standard, we conclude a rational trier of fact could find beyond a reasonable doubt that appellant committed the robbery and used or exhibited a firearm during the commission of the offense. *See Brown*, 270 S.W.3d at 567. Thus, the evidence is sufficient to sustain the conviction for aggravated robbery with a deadly weapon. *See Wise*, 364 S.W.3d at 903; *Brook*, 323 S.W.3d at 895. We overrule appellant's sole issue.

MODIFY JUDGMENT

We note the trial court's judgment contains a $3,000 fine that was not orally pronounced when the forty-year sentence was imposed. When a conflict exists between the oral pronouncement and the judgment, the oral pronouncement controls. *See Coffey v. State*, 979 S.W.2d 326, 328 (Tex. Crim. App. 1998). Further, the judgment states appellant pleaded true to a second enhancement paragraph and the trial court found the second enhancement paragraph true. The record shows appellant pleaded true to only one enhancement paragraph and the trial court found one enhancement paragraph true. We modify the trial court's judgment to delete the $3,000 fine and to show the plea and finding on the second enhancement paragraph is "N/A." *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd).

As modified, we affirm the trial court's judgment.

/Ada Brown/

ADA BROWN
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

130965F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ANTWAUNN DOMINICK DISMUKE,
Appellant

No. 05-13-00965-CR          V.

THE STATE OF TEXAS, Appellee

Appeal from the 291st Judicial District
Court of Dallas County, Texas (Tr.Ct.No.
F13-51584-U).
Opinion delivered by Justice Brown,
Justices Lang and Myers participating.

Based on the Court's opinion of this date, the trial court's judgment is **MODIFIED** as follows:

The section entitled "Plea to 2nd Enhancement/Habitual Paragraph" is modified to show "N/A."

The section entitled "Findings on 2nd Enhancement/Habitual Paragraph" is modified to show "N/A."

The section entitled "Fine" is modified to show "$0."

As modified, we **AFFIRM** the trial court's judgment.


Judgment entered June 16, 2014.


/Ada Brown/
_____
ADA BROWN
JUSTICE