**163-15**

ORIGINAL     NO._____

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAY 04 2015

Abel Acosta, Clerk

TO THE

COURT OF CRIMINAL APPEALS

OF TEXAS

★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★

PATRICK SHARARD GUILLORY

Defendant—Petitioner,

FILED IN
COURT OF CRIMINAL APPEALS

MAY 04 2015

Abel Acosta, Clerk

vs.

THE STATE OF TEXAS

Plaintiff—Appellee,

★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★

Petition for Discretionary Review in Cause number
1340306 (Trial) (14-13-01037-CR), In the 180th
District Court of Harris County,Texas

★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★

PETITION FOR DISCRETIONARY REVIEW
★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★

PATRICK SHARARD GUILLORY
Petitioner,Pro Se#1895126
Mc Connell Unit
3001 South Emily Drive
Beeville,Texas 78102

# TABLE OF CONTENTS (TRAP 68.4(b))

Identity of Parties and Counsel                                    II

Index of Authorities                                              III

Statement Regarding Oral Argument                                  IV

Statement of The Case                                              IV

Reasons for Granting Review                                        IV

Statement of Procedural History                                     V

Grounds for Review (68.4(G))                                   VI,VII

Argument                                                            2

Appendix: Opinion of the Court of Appeals

ISSUE #1:                                                           2
Petitioner argues that the evidence presented at trial is legally
insufficient to "prove" beyond a reasonable doubt that he is
guilty of Capital Murder.

ISSUE #2:                                                         5,6
Petitioner argues that the trial court erred in denying him the
requested jury instruction and the omission was highly harmful
and prejudicial.

ISSUE #3:                                                         7,8
Petitioner argues that the Court of Appeals erred in finding
petitioner was not entitled to an instruction on lesser-included
offense of felony murder.

ISSUE #4:                                                        9,10
Petitioner argues that the trial court erred in denying him the
"requested" lesser-included offense of Aggravated Assault in the
jury charge.

ISSUE #5:                                                       11-13
Petitioner argues that the trial court did err in "overruling"
petitioner's "objection" to the State's argument/request that
the jury do the right thing and show the Amaro family that there
is justice in our country, it was (critically improper).

Inmate Declaration                                                 14

Certificate of Service (TRAP 68.11)                                14

Prayer for Relief (68.4(i))                                        13

i

## IDENTITY OF PARTIES AND COUNSEL
### Pursuant to Tex.R.App.P.38.2(a)(1)(A)

District Attorney

**Devon Anderson**
**District Attorney's Office**
**Harris County**
**1201 Franklin St. Ste 600**
**Houston, TX 77002**

Assistant District Attorney
at Trial

**Mary McFaden**
**District Attorney's Office**
**Harris County**

Assistant District Attorney
on Appeal

**Carly Dessauer**
**District Attorney's Office**
**Harris County**
**Appellate Division**

Petitioner

**Patrick Sharard Guillory**
**McConnell Unit**
**3001 S. Emily Drive**
**Beeville, TX 78102**

Counsel at Trial

**Charles A. Brown Jr.**
**708 Main Street, Suite 790**
**Houston, TX 77002**

Counsel on Appeal

**Wayne T. Hill**
**4615 S.W. Freeway, Ste 600**
**Houston, TX 77027**

**Trial Judge**

**Honorable Larry Gist**
**180th District Court**
**Harris County Criminal Justice**
**Center**
**1201 Franklin Street, 18th FL**
**Houston, TX 77002**

ii

## INDEX OF AUTHORITIES

CASES                                                         PAGES

Albiar v. State, 739 S.W.2d 360 (Tex.Crim.App.1987) — 12

Burks v. United States, 437 U.S.1.16.98 S.Ct.2141,57 L.Ed.2d 1 (1978)(emphasis in original):Garrett v. State, 749 S.W.2d 784,792 (Tex.Crim.App.1986) — 3

Cardenas v. State, 30 S.W.3d 384 (Tex.Crim.App.2000) — 9

Cortez v. State, 683 S.W.2d 419 (Tex.Crim.App.1984) — 13

Floyd v. Meachum, 907 F.2d 347,354-55 (2nd Cir. 1999) — 13

Garrett v. State, 851 S.W.2d 853,859-60 (Tex.Crim.App. 1993) — 11

Goldsmith v. Smith, 2014 WL 261007 (Tex.App.Hou.[14th Dist.].2014) — 9

Gomez v. State, 737 S.W.2d 315 (Tex.Crim.App.1987) — 6

Hall v. State, 940 S.W.2d 137,139-40 (Tex.App.-Amarillo. 1998)(pet. ref.): Simmons v. State, 2009 WL3817582.at*3 (Tex.App.-Amarillo.November 16, 2009)(pet. ref.)(Not designated for publication) see also Conner v. State, 67 S.W.3d 192,197 (Tex.Crim.App.2001) — 3

Herbert v. State, 827 S.W.2d 507,509 (Tex.App.-Houston [1st Dist.].1992)(no pet.) — 2

Hill v. State, 30 S.W.3d 505 (Tex.App.-Texarkana.2000) — 8

Johnson v. Tenth Judicial District Court of Appeals at Waco, 280 S.W.3d 866,874 (Tex.Crim.App.2008) — IV

Langford v. Fourteenth Court of Appeals, 847 S.W.2d 581,585 (Tex.Crim.App.1993)(emphasis added) — IV

Larry v. State, 15 S.W.3d 581,585 (Tex.App.-Amarillo. 2000)(Pet. Ref.) — 2

Patterson v. State, 942 S.W.2d (Tex.App.-Texarkana.1997) — 8

Perez v. State, 332 S.W.3d 700,702 (Tex.App.-Amarillo. 2011)(pet. filed) citing: Dewberry v. State, 827 S.W.3d 735,740 (Tex.Crim.App.1999)(cert.den.) 529 U.S. 113, 120 S.Ct.2008, 146 L.Ed.2d 958 (2000) — 2,4

Richardson v. State, 257 S.W.2d 308 (Tex.Crim.App.1953) — 13

Smith v. Flack, 728 S.W.2d 784,788 (Tex.Crim.App.1987) — IV

Smith v. State, 996 S.W.2d 1 (Mo.App.1997)(9 pages) — V

## INDEX OF AUTHORITIES

| CASES | PAGES |
|---|---|
| Standerfer v. State | 11 |
| Temple v. State, 390 S.W.3d 341,360 (Tex.Crim.App.2013) | VII |
| Thacker v. Dretke, 396 F.3d 607 (5th Cir. 2005), Winship 397 U.S. 358,364 S.Ct. 1068, 25 L.Ed.2d 368 (1970) | 11 |
| Thompson v. State, 697 S.W.2d 413,416 (Tex.Crim.App.1985); Michel v. State, 834 S.W.2d 64,67 (Tex.App.-Dallas.1992) (no pet.) | 6 |
| United States v. Brady, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) | 5 |
| U.S. v. Gallardo-Tropero, 185 F.3d 307,319-20 (5th Cir. 1999) | 13 |
| U.S. v. Mareno, 185 F.3d 465 (5th Cir. 1999) | 8 |
| U.S. v. Martinez-Larraga, 517 F.3d 256 (5th Cir. 2008) | 11 |
| Wooley v. State, 273 S.W.3d 260,268,n12 (Tex.Crim.App.2008) | 3 |
| Zamora v. State, 411 S.W.3d 504 (Tex.Crim.App.2013) | 6 |

## Tex. Code of Criminal Proc.

| | |
|---|---|
| Article 36.14 | 8 |
| Article 36.15 | 9 |
| Article 38.14 | 6 |

## Tex. Constitution

| | |
|---|---|
| Article 5§5 | V |

## Tex. Penal Code(s)

| | |
|---|---|
| 7.01 | 7 |
| 7.02 (a) Criminal Responsibility | 5 |
| 19.03 | 10 |
| 19.03 (a)(2) | VI |
| 29.02 (2) Vernon Supp. 2010 | 3 |

## Tex. Rules of App. Proc.

| | |
|---|---|
| 68.1 | 1 |

**STATEMENT REGARDING ORAL ARGUMENT (TRAP 68.4(d))**

Petitioner is not requesting oral argument in this case unless the respondents request oral argument in this matter.

**STATEMENT OF THE CASE (TRAP 68.4(e))**

Petitioner was indicted for the offense of Capital Murder. The indictment alleged that petitioner intentionally caused the death of Raul Amaro while in the course of committing or attempting to commit the robbery of Raul Amaro. **(CR-I-7)** Petitioner entered his plea of **"not guilty"** and was tried by a jury. The jury found the petitioner "guilty" as charged in the indictment. **(CR-I-307)** The petitioner was sentenced to life without parole in the Texas Department of Criminal Justice - Institutional Division. **(CR-I-308)** A Motion for New Trial was filed in this matter. **(CR-I-321)** And the petitioner gave Notice of Appeal in this case. **(CR-I-311)** The Fourteenth Court of Appeals **affirmed the judgment in a Non-Published Opinion on February 10, 2015, in No. 14-13-01037-CR.**

**REASONS FOR GRANTING REVIEW (TRAP 66.3(a))**

Petitioner avers that the Court of Appeals' decision is in direct conflict with another Court of Appeals' decision on the same issue which involves matters of criminal law. **Smith v. Flack 728 S.W.2d 784, 788 (Tex.Crim.App.1987)** "Criminal Law Matters" as used in **Tex.Const.Article.5§5,** also encompasses at least "all legal issues arising directly out of a criminal prosecution. **Lanford v. Fourteenth Court of Appeals, 847 S.W.2d 581, 585 (Tex. Crim.App.1993)(emphasis added)** The Court of Criminal Appeals construes the phrase so as to "keep the lines of direct appellate review open, so that the legal issues can be confronted directly and finally resolved..." **Johnson v. Tenth Judicial District Court of Appeals at Waco, 280 S.W.3d 866, 874 (Tex.Crim.App.2008)** Petitioner Guillory shows this Honorable Court that the Four-

teenth Court of Appeals decision is in conflict with the Court of Appeals' decision in Jackson County. **Smith v. State, 966 S.W. 2d 1 (Mo.App.1997)(9 pages):** Defendant was convicted in the Circuit Court of Jackson County... of First Degree Murder and Armed Criminal Action, and he appealed. The Court of Appeals... held that: (1) defendant was entitled to instruction on lesser-included offense of Second Degree Murder. (2) The State failed to establish what evidence supported the findings that defendant committed the offense. (3) Order granting Certificate of Appeal-ability (2 pages) upon de novo review of the record and peti-tioner's motion, the court granted review on whether petitioner received his due process right to a fair trial due to counsel's failure to request a jury instruction on the charge... The judg-ment of the trial court is reversed and remanded.

Petitioner Guillory requests that this Honorable Court reverse and remand on the merits of the issues presented on his Petition for Discretionary Review.

### STATEMENT OF PROCEDURAL HISTORY

On November 28th, 2011, at approximately 7:40 p.m., Miguel Frias went to a Conoco station.**(R-III-32)** After pumping gas, Frias got back in his vehicle with a friend. Frias then heard four gunshots. **(R-III-35)** Frias thought the gunshots came from the back of the store. He saw people running from the side and the last person he saw running collapsed. **(R-III-37)** He descri-scribed the individual who collapsed as a little bit older man who he had never seen before. **(R-III-41)** Before collapsing, the man was hunched over with his hand on his left side. **(R-III-43)** Frias called 911 and was following their instructions in an effort to assist the fallen man. **(R-III-44,45)** The man appeared to be going in and out of consciousness when Frias was trying to ask him questions. **(R-III-46,47)** Frias described the man's answer as "mumbling". **(R-III-48)** Frias was **"unable to actually tell the police who shot the complainant [Raul Amaro]." (R-III-51)** After hearing the gunshots, Frias said people were running

from the side, people were running from inside coming out of the store and getting into their cars and leaving, people were trying to get the heck out of there. **(R-III-61) FRIAS ACKNOWLEDGED THAT HE WAS UNABLE TO PLACE PETITIONER AT THE SCENE THAT EVENING. (R-III-64)**

**[Officer Jose Gomez]**, with the Harris County Sheriff's Department, was working patrol on November 28, 2011 when he received a dispatched call to **13102 Bissonet. (R-III-68)** After arriving, Gomez noticed a Hispanic male lying on the ground and another Hispanic male putting pressure on the man's left side. **(R-III-72) Gomez attempted to speak to the man on the gound (complainant),** who Gomez believed was about to die. **(R-III-77)** Gomez stated that the complainant told him that it was a black male and that the black male was trying to rob him and then the male shot him. **(R-III-78)** Gomez also spoke with two other individuals at the scene **(Alex Flores and Ivan Martinez). (R-III-81) "GOMEZ DESCRIBED BOTH INDIVIDUALS AS BEING PRETTY INTOXICATED" (R-III-81)**

During cross-examination, Gomez acknowledged that he did not ask the complainant who was with him. Gomez also failed to determine how many people came at the complainant. **The complainant was unable to tell Gomez what his assailant was wearing. (R-III-86)** In sum, the only thing that the complainant was able to say was that a Black male attempted to rob him and shot him. **(R-III-86)** Further, the complainant was unable to say **"whether he was with Flores and Martinez that night." (R-III-87)**

## GROUNDS FOR REVIEW (TRAP 68.4(G))

ISSUE #1: There was **[N]o** positive identification that petitioner Guillory was the person who shot the complainant or that "he" took part in this shooting. The States witness "Vasquez" could not positively identify petitioner as the shooter or that he took part in this crime.

ISSUE #2: Petitioner shows this court facts that there is **[N]o Evidence that a crime was committed by him, or a murder** was committed during the course of a robbery. The State showed clear evidence that the victim "Amaro" was found to have a large amount of money still inside

VI

his wallet.

**ISSUE #3:** Petitioner argues that the Court of Appeals erred in finding petitioner was not entitled to an instruction on the lesser-included offense of Felony Murder, even though the State failed to prove every element of Capital Murder beyond a reasonable doubt.

**ISSUE #4:** Petitioner argues that the trial court critically erred on error #3 and #4 in denying his jury instructions where the evidence strongly showed the State had failed to establish beyond a reasonable doubt that petitioner committed this crime **and where the evidence clearly shows that the State's witness knew of the criminal wrongdoings "before" arriving at the store. (Proving the accomplish witness argument)**

**ISSUE #5:** The State made an improper plea for law enforcement, requesting the jury to place themselves in the shoes of the victim's family when deliberating the issue of guilt or innocence.

Petitioner argues that to obtain a conviction for Capital Murder the State was required to **"prove"** that petitioner murdered Amaro and that the murder was intentionally committed during the course of a robbery. **Tex.Penal Code.§ 19.03(a)(2)** Petitioner contends that his conviction should be set aside because there is no evidence that proves **"he" (1) murdered Amaro, or that "he" (2) committed a robbery or that a robbery even took place.** Petitioner understands that this court, in reviewing the legal sufficiency of the evidence, must examine all of the evidence in light most favorable to the verdict and determine whether a rational trier of the facts could have found the essential elements of the offense beyond a reasonable doubt. **Temple v. State, 390 S.W.3d 341,360 (Tex.Crim.App.2013)** The evidence is insufficient when the record contains no evidence or merely a "modicum" of evidence as shown here in this case. **(See Claim No. One at P. #2)**

NO._____


TO THE


COURT OF CRIMINAL APPEALS
OF TEXAS

*************************************************

PATRICK SHARARD GUILLORY
                                Petitioner,



VS

                                        ε


THE STATE OF TEXAS
                                Respondent,


**************************************************
 Petition for Discretionary Review in Cause number;
 14-13-01037-CR, From the 180th District Court in
 Harris County,Texas,under cause no.1340306.
**************************************************



PETITION FOR DISCRETIONARY REVIEW

*********************************


To the Honorable Judges of the Court of Criminal Appeals:

COMES NOW,Patrick Sharard Guillory,and Submits this petition
under **TEX. R.APP. P.68.1** in support of this request for remand of
this cause to the court of appeals for new analysis.


1.

## CLAIM NO. ONE FOR REVIEW

**Whether the evidence is legally insufficient as a matter of law to sustain petitioner's conviction for the offense of Capital Murder.**

### ARGUMENT FOR RECONSIDERATION

### Underlying Law

The well-known standard of review of legally insufficient evidence claims asks "whether, after viewing the evidence in light light most favorable to the verdict, any rational trier of the facts could have found the essential elements of the crime beyond a reasonable doubt. **Larry v. State, 15 S.W.3d 581,585 (Tex.App.-Amarillo, 2000, pet. ref.)** A reviewing court must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. **Perez v. State, 332 S.W. 700,702 (Tex.App.-Amarillo 2011,pet. filed), citing Dewberry v. State, 4 S.W.3d 735,740 (Tex.Crim.App.1999), Cert. denied, 529 U.S. 1131, 120 S.Ct.2008, 146 L.Ed.2d 958 (2000)** Although this is generally an easy standard to meet, where the uncontradicted evidence reflects a defense. No rational trier of the facts could find petitioner guilty beyond a reasonable doubt, we must reverse. **Herbert v. State, 827 S.W.2d 507,509 (Tex.App. -Houston [1st Dist].1992, no pet.)** Petitioner Guillory shows this court clear facts within the record that neither of the State's witnesses positively identified him as being the person who shot "Amaro" or that he committed "any" robbery during this offense. **(R-III-51)** The State's witness, Frias, was unable to actually tell the police who shot the complainant [Raul Amaro]. **(R-III-86)** Which states the complainant as well as Frias was unable to tell officer Gomez what his assailant was wearing. The record clearly reflects that the only "alleged" witnesses were two individuals, **Alex Flores and Ivan Martinez,** whom Officer Gomez spoke with at the scene. **(R-III-81)** Gomez described both individuals as being "pretty intoxicated." **(R-III-82)** Therefore, the record stands as being established on circumstantial evidence presented during petitioner's trial and in light of

the evidence as being insufficient to prove Capital Murder. Some authorities suggest a finding of insufficient evidence that involves the Appellate Court's substitution of it's own judgment for that of the jury, other cases include those from the Court of Criminal Appeals and the United States Supreme Court dictating otherwise; such an appellate reversal means that the government's case was lacking that it should not have even been submitted to the jury. **Burks v. United States, 437 U.S.1, 16, 98 S.Ct.2141, 57 L.Ed.2d 1 (1978),(emphasis in original); Garrett v. State, 749 S.W.2d 784, 792 (Tex.Crim.App.1986)** Consequently, no encroachment on the jury's role is entailed and legally insufficient evidence prompts reversal and acquittal rather than a new trial. **Wooley v. State, 273 S.W.3d 260, 268, n.12 (Tex.Crim.App. 2008)**

Where the indictment accuses the defendant of Capital Murder via murder in the course of committing or attempting to commit the offense of robbery, one essential element is that the defendant "intended to obtain or maintain control of the decedent's property prior to or during the killing." **Hall v. State, 940 S.W. 2d 137, 139-140 (Tex.App.-Amarillo 1998,Pet.ref.) Simmons v. State, 2009 WL 3817582, at*3 (Tex.App.-Amarillo, November 16, 2009 pet.ref.) (Not designated for publication); Conner v. State, 67 S.W.3d 192, 197 (Tex.Crim.App.2001)** Robbery requires proof of either bodily injury or placing of another in fear of imminent bodily injury or death. **Tex.Pen.Code Ann.§Art. 29.02(2)Vernon Supp.2010)** The State "never" proved Guillory committed either.

## APPLICATION OF LAW TO FACTS

The only evidence the State relied on to attempt to show intent of petitioner was the testimony of Roy Vasquez. Who testified that he picked up two people in the neighborhood and offered them a ride. Vasquez stated that he was talking on the phone when the two entered his car. **(R-III-139)** Vasquez [made] several statements that did not positively show that petitioner committed this offense, not one thread of evidence that proves intent.

3.

or the state of mind of petitioner to commit this offense.

Petitioner shows that nothing in the record or anything stated by the State's witness indicated he, the petitioner, formed the intent before, during, or after the murder or of taking anything by force. In fact, the petitioner was never positively identified at the convenience store during the time of this offense. Therefore, all the testimony by the State's witness is clearly inadmissible if taken into account **Perez, 332 S.W.3d at 702** and therefore unsupported by any evidence to sustain this conviction against petitioner. The testimony of Amaro being robbed – if indeed he was. The evidence that he was robbed is again unsupported by the record. The Crime Scene Unit Deputy, Gary Clayton, established that $304.00 was found still inside the complainants wallet at the scene. **(R-III-127)** Clayton failed to collect clothing from the complainant for forensic testing. **(R-III-128)** There is no evidence that supports this conviction that establishes that petitioner committed this offense. There is no physical evidence, forensic or biological evidence, no positive eyewitness identification that proves "beyond a reasonable doubt" that petitioner committed this crime or was a part of the offense. The State prosecutor "failed" to establish that petitioner formed "intent" to commit this act or was in "any way a party." The State can not shift the burden on the defense to prove otherwise, because the State and the State only has the burden to prove a defendant guilty of an offense via the jury for guilt and innocence on the presentment of evidence. Therefore, the appropriate remedy is to vacate the Trial Court's judgment and enter an Order of Acquittal.

4.

CLAIM NO. TWO FOR REVIEW:
The Trial court erred when it denied petitioner's request for an accomplice witness jury charge. (R.V.5)


STATEMENT OF FACTS "RESUBMITTED" UNDER POINT OF ERROR NO. TWO


At the conclusion of the evidence, the trial court submitted it's proposed jury charge to the respective parties and asked if there were any objections. (R-V-5) The State voiced no objections. Petitioner's counsel objected to the lack of an accomplice witness charge. (R-V-5) **The trial court overruled petitioner's objection.**


ARGUMENT FOR RECONSIDERATION


Petitioner, Patrick Guillory, argues that the accomplice witness jury charge was "critically" necessary to establish that there was other evidence that tended to connect Vasquez as a party to this offense. Therefore, the trial court erred by overruling petitioner's request. Guillory shows this Honorable Court that the State trial court made and unreasonable determination in it's decision to overrule the defense's request for an accomplice witness jury charge. This is a violation of petitioner's due process right to a full and fair trial. **United States v. Brady, 397 U.S. 742, 90 S.Ct.1463, 25 L.Ed.2d 747 (1970)** The record clearly reflects "supportable evidence" that tends to connect Rogelio Roby Vasquez as an accomplice. **Tex.Penal Code.Sec.7.02(a) [Criminal Responsibility for the conduct of another]...(a)** A person is criminally responsible for an offense committed by the conduct of another "If"; (3) Having a legal duty to prevent the commission of the offense and acting with intent to promote or assist it's commission, he fails to make a "reasonable effort" to prevent the commission of the offense. Petitioner contends that the law is well settled in Texas that in determining whether a defendant participated in an offense as a party; the court may examine the events **before, during, and after the commission of the offense** and may rely on actions by the defendant that shows

5.

an understanding and common design to commit the offense. **Thompson v. State, 697 S.W.2d 413,416 (Tex.Crim.App.1985); Michel v. State, 834 S.W.2d 64,67 (Tex.App.-Dallas.1992, no pet.)** Vasquez stated in open court that "he" was well aware of Tyreon Young's plan to commit a robbery [Hit a Lick] as Vasquez drove to the Conoco location. Vasquez testified that the individual in the back set displayed a revolver to Vasquez. Therefore, the evidence presented herein show's that Vasquez was in fact a party to this offense. He failed to call 911 or stay at the location until the police arrived, if indeed he was not a party. **Article 38.14 of the Texas Code of Criminal Procedure** clearly provides that a conviction can not be had upon the testimony of an accomplice unless its corroborated by other evidence tending to connect the defendant with the offense and the corroboration is not sufficient if it merely shows the commission of the offense.

An accomplice witness is one who participates before, during or after the crime. **Gomez v. State, 737 S.W.2d 315 (Tex.Crim.App. 1987)** If a "prosecution witness" is an accomplice, the trial court is under a legal duty to instruct the jury accordingly. **Zamora v. State, 411 S.W.3d 504 (Tex.Crim.App.2013)** According to Vasquez's own testimony "he admitted" that he was aware of the plan to rob someone at the Conoco store on November 28th, 2011. The record and statements clearly reflect that Guillory's Constitutional right to a full and fair defense was violated **U.S.C.A. §6.** The trial court's decision to overrule the objection "created" social harm within the proceeding and caused the jury to be withheld critical information violating petitioner's due process right to a fair trial. Guillory asserts that the evidence of whether Vasquez was a "key" to this offense relied upon the requested jury charge being placed before the jury. Therefore, the jury was unable to hear this evidence that would have established that Vasquez played an important role in this offense and reversal is required. **Petitioner asks that this Honorable Court reverse the Trial Court's decision and remand for a new trial on the merits.**

**CLAIM NO. THREE FOR REVIEW:**
**The Court of Appeals erred in finding petitioner was not entitled
to an instruction on the lesser-included offense of Felony Murder**

## EVIDENCE OF THE FACTS

In the above claim petitioner referenced back to point of
error one and two, in addition to the objection and the trial
court's failure to submit a jury instruction on the lessor-inclu-
ded offense of murder. The jury was instructed only on the law
pertaining to the offense of Capital Murder. **(CR-I-298-306)** The
evidence clearly shows, as noted above, evidence presented by the
State "failed" to show the commission of Capital Murder. Without
direct proof in the record of what took place behind the Conoco
store on November 28, 2001, the trial court instructed the jury
that it could only find petitioner guilty or not guilty.

## ARGUMENT FOR RECONSIDERATION

The evidence presented during trial and within the petition
herein, raises questions about who actually shot and killed Raul
Amaro. There were no eyewitnesses to the shooting (even taking
into consideration that clearly in the record the mumbling refer-
enced to two black males). **(R-III-46-48,51)** There was no evi-
dence establishing how many people total were behind the Conoco
store on November 28, 2011. People often congregated on the side
of the store and drank beer. **(R-III-29)** The area behind the
store was inhabited by a large group of homeless people. **(R-III-
98)** The record reflects that the "only" person identified as
having "any" physical contact with anyone as he was running from
behind the store was Tyreon Young. Petitioner establishes that
the State has not proven every element beyond a reasonable doubt
to prove that he is guilty of Capital Murder. A jury instruction
was warranted to show petitioner's state of mind.

Petitioner argues that the trial court committed fundamental
error by delivering a charge to the jury that impermissibly ex-
panded the statutory authority to find a defendant guilty beyond

7.

a reasonable doubt and if so, finding a defendant guilty of a lessor-included offense of murder. The law is well-established that must prove knowingly and intent and all elements "must" be proven to produce a conviction. Anything less relieves the State of its burden to prove every element of its case beyond a reasonable doubt. **Tex.Penal Code.Ann.art.§6.03(a)** Intent or knowingly are essential elements of "murder" as alleged and must be proven beyond a reasonable doubt. **Patterson v. State, 942 S.W.2d (Tex. App.-Texarkana.1997)** According to **Vernon.Ann's.Tex.Code.Crim. Proc.Art.36.14**, a jury charge is fundamentally defective if it authorizes a conviction without requiring the jury to find (all) the elements of an offense beyond a reasonable doubt. A jury charge must be legally accurate and factually supportable, courts may (not) instruct the jury with a charge that lacks an evidentiary predicate. **U.S. v. Mareno, 185 F.3d 465 (5th Cir. 1999)** The court's charge clearly excluded a lessor-included offense paragraph and it's well within the record that there was no physical or biological evidence that connected petitioner to this offense.

Petitioner avers that moreover special instruction charge of the court relieved the jury of its duty when it adds or excludes. The trial court must produce a correct jury charge that does not violate the rights of the accused to have a full and fair opportunity to present a defense and if the prosecution fails to prove an element of that charge the jury has a legal duty to decide on a lessor-included offense then that of the primary charge. **Hill v. State, 30 S.W.3d 505 (Tex.App.-Texarkana.2000)**

This court should concur with the above cited precedents that the trial court exclusion of a lessor-included offense instruction impermissibly expanded the statutory authority of the definition required to prove every element, thus it caused egregious harm. Petitioner requests that this court reverse and remand for a new trial on the facts presented herein and any other relief deemed by this Honorable Court.

8.

CLAIM NO. FOUR FOR REVIEW:
The trial court erred when it denied defendant's request for a lesser-included offense of aggravated assault in the jury charge. (R-V-5)

## FACTS FOR RECONSIDERATION

Petitioner again reincorporates the statement of facts in claim numbers one, two, and three to support his contensions in his argument and authorities presented herein for this court's consideration and evaluation of this point of error no. four.

## ARGUMENT FOR RECONSIDERATION

Petitioner argues that within the court's charge presented to the jury during closing argument, petitioner's trial counsel objected to the trial court overruling his objection to an improper jury charge that excluded a lesser-included offense of aggravated assault. (R-V-5) The jury was only instructed on the law pertaining to Capital Murder. (CR-I-298-306) Petitioner Guillory shows as noted on point of error number three; **Article 36.15 of the Code of Criminal Procedure** provides for the submission of a jury instruction and objection to the trial court's failure to submit a proper charge to the court.

Petitioner argues that during his criminal trial the prosecution failed to establish whether petitioner was the person who shot and killed Raul Amaro on November 28, 2001 and the record clearly reflects that the burden was and remains on the court to prove all elements that petitioner Guillory is guilty of Capital Murder. The fact remains that the jury was not charged with the required lesser-included offense charge. Petitioner contends that the law is well settled in that aggravated assault is a lesser-included offense of murder and therefore of Capital Murder **Cardenas v. State, 30 S.W.3d 384 (Tex.Crim.App.2000)** Petitioner re-establishes in the instant appeal the holding in **Goldsmith v. State, 2014 WL 261007 (Tex.App.Hou.[14th Dist.].2014)** that aggravated assault by threats did constitute a lesser-included

9.

offense of Capital Murder under the facts of the case. Petitioner argues that the trial court erred in not submitting a lesser-included jury instruction on aggravated assault when petitioner's counsel objected to the trial court's failure to do so. Again Guillory shows this Honorable Court clear facts within the record, as noted above in point of error number three above. **There was no evidence presented at trial to establish that the individual who shot and kill Raul Amaro did so with the specific intent to cause his death as required by Section 19.03 of the Texas Penal Code.** Nor was there "any" evidence that tied petitioner as being the person who shot and killed the complainant Amaro. The critical error that is in question here is was the petitioner "denied" a Constitutional right when the jury was only given the option of finding petitioner "**guilty**" or "**not guilty**" without consideration of a lesser-included offense, as also addressed in point of error number three. Where the elements of an offense remains in doubt, but the defendant is **[clearly not guilty]** of the greater offense. The trial court was in error when it denied the petitioner the requested jury charge. The jury, as being the judges of the facts presented, was clearly denied critical information that would have made a difference in this trial. Therefore, without the aggravated assault charge, the jury was denied the opportunity to find petitioner guilty of something lesser than Capital Murder. Because of the trial court's failure to so charge the jury, petitioner suffered some actual harm. There can be no other remedy but to reverse the <u>trial court's</u> judgment and remand the case back for a new trial and any other relief deemed by this Honorable Court.

Patrick Sharard Guillory

Patrick Sharard Guillory

10.

CLAIM NO. FIVE FOR REVIEW:
The trial court erred when it overruled petitioner's objection
to the prosecutor making an improper plea for law enforcement by
essentially "asking" the jury to place themselves in the shoes
of the victim's family.


ARGUMENT FOR RECONSIDERATION

In the instant case, petitioner argues facts that show the
State prosecutor violated a protected right by requesting that
the jury convict the petitioner based on personal interest, in-
stead of the evidence presented during this critical stage of
petitioner's trial. **U.S. Martinez-Larraga, 517 F.3d 256 (5th Cir.
2008)** The State prosecutor made a plea to the jury that ulti-
mately tainted the jury's decision making ability to decide the
evidence on the facts presented. This violation created irre-
parable harm and prejudice was unavoidable.

Petitioner further argues the statement made to the jury was
legally improper as it violates the petitioner's due process
right to a full and fair trial. He avers that the due process
requires that a conviction for a criminal offense (must) be sup-
ported by a finding beyond a reasonable doubt and that (all)
elements of the crimes are proven. **Thacker v. Drethe, 396 F.3d
607 (5th Cir. 2005), Winship, 397 U.S. 358,364, 90 S.Ct 1068, 25
L.Ed.2d 368 (1970)** That similarly in jury trials the **Sixth
Amendment** requires that same care.

Moreover, in **Standerfer v. State** a prosecutor is not enti-
tled to commit a juror on whether they should convict a defendant
based on their personal interest in any given case. Furthermore,
a venireman is not subject to challenge for cause merely because
it would (require more evidence then the legal minimum.) **Garrett
v. State, 851 )S.W.2d 853,859-60 (Tex.Crim.App.1993)**

Petitioner contends that when certain rights are clearly
violated in open court there can be no other remedy but to re-
verse the judgment of the trial court, because (1) the law is
clear that in (closing argument) a prosecutor may not personally
request that the jury decide the issues of the case based on
personal feelings and not on the evidence presented, or (2) plea
for law enforcement/the victims family on personal interest, in

11.

so requiring a harsher sentence or lead the jury to believe that the State's argument is the truth rather than allowing the jury to decide whose right or wrong. (3) Place the **[P]restige** of the government in front of the jury to consider the facts of what actually happened. During trial the plea by the State prosecutor violated a protected right of the accused, in the instant case the prosecutor made the following statements which ultimately tainted the minds of the jury. It is well established that the trial court instructed the jury as follows: **Your sole duty at this time is to determine the guilt of the defendant under the indictment in this cause and restrict your deliberations soley to the issue of guilt or innocence of the defendant."** (CR-I-305,306)

The trial court also instructed the jury that the prosecution had the burden of proving that the defendant is guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it failed to do so, they must acquit the defendant. **(CR-I-304)**

Due Process Violation:

During the prosecutor's final summation to the jury, she stated: **Please, please, go back there, do the right thing show the Amaro family that there is justice in our country. Show them we are willing to do the right thing. We are willing to hear and -"(R-V-41)** Petitioner's counsel lodged his objection that the prosecutor was making an inappropriate plea for law enforcement. **(R-V-41)** The trial court overruled petitioner's objection. **(R-V-41)** Petitioner Guillory re-establishes his argument and show's this court that a jury argument is permissible if it falls into one of the following categories: **(1) Summation of the evidence, (2) Reasonable deduction from the evidence, (3) Answer to argument of opposing counsel, and (4) PLEA FOR LAW ENFORCEMENT. Albiar v. State, 739 S.W.2d 360 (Tex.Crim.App.1987)** Guillory further restates the citing within the record that it has long been the law of this State that the law provides for and presumes that the accused person will receive a fair trial, and a fair trial can not be had if it is not free from improper jury argu-

12.

ment. **Richardson v. State, 257 S.W.2d 308 (Tex.Crim.App.1953)** Further an accused person is entitled to have his guilt or punishment determined without reference by any outside influence. **Cortez v. State, 683 S.W.2d 419 (Tex.Crim.App.1984), Floyd v. Meachum, 907 F.2d 347,354-55 (2nd Cir. 1999)** Prosecutor's request that the jury consider the prosecutor's own integrity and ethics before deliberating on the evidence was improper because "credibility voucher" invited the jury to view the verdict as indication of the prosecutor's integrity rather than an assessment of guilt or innocence based on the evidence presented at trial. **U.S. v. Gallardo-Tropero, 185 F.3d 307,319-20 (5th Cir. 1999)** Prosecutor's closing argument "asking"(do you think that agents for the federal government and a prosecutor for the federal government, for the [U.S.A.] are going to risk their careers to commit perjury was improper statements.

Petitioner argues that just as in the case of **U.S. v. Gallardo-Tropero,** the State prosecutor made "improper request" to the jury that was highly improper and violated the rights of the accused by stating during final summation to the jury, the prosecutor stated: Please, please, go back there, do the right thing show the Amaro family that there is justice in our country, show them that we are willing to do the right thing. We are willing to hear and -" **(R-V-41)**

Petitioner's counsel lodged his "objection" that the prosecutor was making an inappropriate plea for law enforcement, therefore just as the cited cases above, petitioner requests that this Honorable Court reverse and remand the case for a new hearing and "any" other relief deemed by this Court.

### PRAYER FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Petitioner prays that after this Honorable Court reviews the points of error for reconsideration within his petition, and enter a Judgment of Acquittal on this matter.

Patrick Sharard Guillory
Petitioner,Pro Se#189512
Mc Connell Unit
3001 S.Emily Drive

13

## INMATE DECLARATION

I, Patrick Sharard Guillory, am the petiioner and being present-
ly incarcerated in W.G. McConnell Unit, declare under penalty of
perjury that, according to my belief, the facts stated in the
above Petition for Discretionary Review are true and correct.

/s/ April 27th_____ 2015
Patrick Sharard Guillory

## CERTIFICATE OF SERVICE

I, Patrick Sharard Guillory, certify that a true and correct copy
of petitioner's Petition for Discretionary Review has been served
upon the Clerk of the Court of Criminal Appeals, who is requested
to forward a copy to the State prosecuting attorney as required
by TRAP 68.11.

Executed 27th____ day of April____ 2015
Patrick Sharard Guillory

CC:  **Clerk of the Court – Abel Acosta**
     **Court of Criminal Appeals**
     **P.O. Box 12308, Capitol Station**
     **Austin, Texas 78711**

## ORDER OF THE COURT

On this date came to be heard petitioner's Motion for Suspension of Copies pursuant to TRAP 9.3(b) and it is hereby ordered that this motion be **GRANTED / DENIED** .

**Executed**_____**day of**_____ **2015**

_____

**Presiding Judge**



February 10, 2015



## JUDGMENT

## 𝔗𝔥𝔢 𝔉𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 ℭ𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

PATRICK SHARARD GUILLORY, Appellant

NO. 14-13-01037-CR                    V.

THE STATE OF TEXAS, Appellee

---

This cause was heard on the transcript of the record of the court below. Having considered the record, this Court holds that there was no error in the judgment. The Court orders the judgment **AFFIRMED**.

We further order this decision certified below for observance.

Affirmed and Memorandum Opinion filed February 10, 2015.



In The

# Fourteenth Court of Appeals

## NO. 14-13-01037-CR

### PATRICK SHARARD GUILLORY, Appellant

### V.

### THE STATE OF TEXAS, Appellee

On Appeal from the 180th District Court
Harris County, Texas
Trial Court Cause No. 1340306

## MEMORANDUM OPINION

In this appeal from a conviction for capital murder, we consider whether the evidence is legally sufficient to support the conviction, whether the trial court erred by declining a request for multiple jury instructions, and whether the trial court erred by overruling an objection to an improper closing statement. We conclude that the evidence is sufficient and that there is no reversible error as to each remaining issue. We therefore affirm the trial court's judgment.

# BACKGROUND

Raul Amaro, the complainant in this case, died from a single gunshot wound to the chest. The shooting happened just outside of a convenience store in southwest Houston. Authorities came to suspect that appellant was the shooter, and that he had murdered Amaro during the course of a robbery.

The case against appellant was built on circumstantial evidence. One key witness was Rogelio Vasquez, who testified that he had driven two men to the convenience store on the night of the shooting. Vasquez said that he picked the two men up after they had flagged him down on the side of the road. Vasquez recognized one of the men as Tyreon Young, who was the relative of a former classmate. Young climbed into the front passenger seat, and the other man sat in the back. Vasquez did not know the backseat passenger, and at trial, Vasquez could not offer any testimony as to whether the backseat passenger was appellant. (Darius Rose, another witness whose testimony is more fully discussed below, would later identify appellant as Vasquez's backseat passenger.)

Vasquez offered to take his two passengers to the convenience store, where he intended to buy a beer. On the way there, Young asked Vasquez where he could "hit a lick," which is street slang for robbing someone. Vasquez testified that the backseat passenger added, "Yeah, we need some money." The backseat passenger pulled a gun out of his jacket, which Vasquez believed to be a revolver. Vasquez told the men not to rob anyone at the convenience store because his dad would often drink there and he knew the regular customers. The men responded that they would try to rob someone at a nearby restaurant instead.

When they arrived at the convenience store, Vasquez and his passengers parted ways. Vasquez opened the trunk of his car to inspect his stereo system, which he thought was malfunctioning. Vasquez saw his passengers approach Rose,

2

who had just exited a car in a nearby parking space. After a short while, Vasquez testified that he heard four shots rings out in the vicinity. Vasquez looked across the parking lot in the direction of the shooting and saw a portion of the gunman's arm, but not the rest of his body, which was apparently obstructed from view.

Miguel Frias was pumping gas when the shots were fired. He looked up and saw Amaro run out from the side of the convenience store and then collapse on the ground. Frias approached Amaro, who said that "two black guys [had] robbed him." Both Young and appellant are African Americans, but Frias saw neither of them on the night of the murder.

Alex Flores and Ivan Martinez were drinking with Amaro shortly before the shooting occurred. Neither man testified at trial, but their witness statements were retold through a sheriff's deputy who had interviewed them on the night of the incident. According to the deputy, Flores and Martinez said that two robbers came from behind the convenience store and attacked Amaro, who tried to fight back. The robbers reportedly knocked Amaro down, then dragged him to a telephone pole. Martinez tried to intervene, but he and Flores ran away from the fight because one of the robbers began shooting at them.

James Hanson arrived at the convenience store moments after Vasquez. Hanson and Vasquez were familiar with each other, and they exchanged greetings as Vasquez was inspecting his stereo system. When Hanson turned to head inside the convenience store, he observed Young, another familiar face, fighting with an Hispanic male around the corner. Hanson testified that Young pushed the other man down, then Young lifted his hands and looked around to see if anyone wanted to fight back. Hanson claimed that he then saw another man's hand extend from behind the corner of the building, holding a gun. Hanson ran away at the sight of the gun. He heard shots fired but he did not see the shooter.

3

Rose was a passenger in Hanson's car. When he arrived at the convenience store, Rose testified that he saw Vasquez, who had driven there with two male passengers. Rose identified the two passengers as Young and appellant, both of whom he had known previously. Rose spoke briefly with Young and appellant, and then they left in different directions.

A security camera captured the meeting between the three men, but the resolution was not high and the figures were mostly grainy. According to Rose, the surveillance footage showed Young and appellant heading towards the rear exterior of the convenience store, away from any public entrance. Their path could have taken them around to the location where the shooting occurred, but there was no footage confirming that they had taken that circuitous route.

Before the shots were fired, Rose testified that he saw Young fighting with Flores across the parking lot, on the opposite side of the convenience store where Vasquez and Hanson had parked. As with every other witness, Rose testified that he heard gunfire, but he did not see the shooter.

The medical examiner found muzzle abrasions and soot in Amaro's wound, indicating that he had been shot at point-blank range. The medical examiner also found a bullet fragment, which a forensics investigator determined was consistent with a revolver round. Another investigator opined that a revolver could have been used in the murder because no bullet casings were found at the crime scene. The murder weapon itself was not recovered.

## SUFFICIENCY OF THE EVIDENCE

To obtain a conviction for capital murder, the State was required to prove that appellant murdered Amaro and that the murder was intentionally committed during the course of a robbery. *See* Tex. Penal Code § 19.03(a)(2). Appellant

4

contends that his conviction should be set aside because there is no evidence that he murdered Amaro or that a robbery ever took place.

When reviewing the legal sufficiency of the evidence, we examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). The evidence is insufficient when the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense. *See Garcia v. State*, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012).

Although we consider everything presented at trial, we do not reevaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Because the jury is the sole judge of the credibility of witnesses and of the weight given to their testimony, any conflicts or inconsistencies in the evidence are resolved in favor of the verdict. *See Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). Our review includes both properly and improperly admitted evidence. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We also consider both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *Id.* Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

Even though there was no eyewitness testimony regarding the identity of the shooter, a rational jury could have found beyond a reasonable doubt that appellant was the person who had murdered Amaro. The undisputed evidence showed that three Hispanic men were attacked outside of a convenience store by

5

two African-American men. The record supported a finding that Young was one of the attackers. Two witnesses (Hanson and Rose) testified that they each saw Young fighting with one of the Hispanic men in the moments before the shooting.

Another witness (Vasquez) testified that he had driven Young to the convenience store with a second African-American man, and during the commute, the two passengers had discussed the possibility of robbing someone. Vasquez testified that the backseat passenger had exhibited a firearm that appeared to be a revolver, which could have been used as the murder weapon. Although Vasquez could not confirm that appellant was his backseat passenger, Rose testified that he affirmatively saw appellant exiting Vasquez's car with Young when they both arrived at the convenience store. The jury could have reasonably determined that appellant participated in the robbery with Young, and that appellant shot Amaro with the revolver witnessed by Vasquez.

Appellant contends that there is no evidence that the murder was committed during the course of a robbery because the record showed that a large amount of money was still found in Amaro's wallet. Appellant appears to suggest that a completed theft is required before a robbery can occur, but that is mistaken; an attempted theft is sufficient. *See* Tex. Penal Code §§ 29.01(1), 29.02; *see also id.* § 19.03(a)(2) (a person commits a capital murder if he intentionally commits a murder "in the course of committing or attempting to commit . . . robbery").

Here, Vasquez testified that Young and the backseat passenger had expressed a desire to "hit a lick," or rob someone. Hanson and Rose witnessed Young physically attacking an Hispanic male, which is consistent with an attempt to commit a theft. Amaro also said in his final moments that "two black guys [had] robbed him." From this evidence, the jury could have reasonably determined that Amaro's murder was committed during the course of a robbery.

The jury could have also found that the murder was intentional. The medical examiner testified that Amaro died from a single gunshot, which had been fired into the chest at point-blank range. This evidence supported a finding that appellant fired the shot with the deliberate intent to kill. *See Godsey v. State*, 719 S.W.2d 578, 580–81 (Tex. Crim. App. 1986) ("The specific intent to kill may be inferred from the use of a deadly weapon, unless in the manner of its use it is reasonably apparent that death or serious bodily injury could not result." (citations omitted)); *Nickerson v. State*, 312 S.W.3d 250, 262 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (a "point-blank shot" supports a finding that the shot was intentional).

Viewing the record in the light most favorable to the verdict, we conclude that there is sufficient evidence from which a jury could find every element of the offense beyond a reasonable doubt.

## ACCOMPLICE-WITNESS INSTRUCTION

Appellant argues in his next issue that the trial court reversibly erred by refusing his request to give an accomplice-witness instruction. Appellant contends that Vasquez was an accomplice, and that the instruction was therefore warranted.

We review a complaint of jury-charge error under a two-step process, considering first whether error exists. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If error does exist, we then analyze that error for harm under the procedural framework of *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984).

An accomplice is someone who participates with the defendant before, during, or after the commission of a crime, and who acts with a culpable mental state. *See Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). Under Texas law, a conviction cannot be had on the testimony of an accomplice unless

7

the testimony is corroborated by other evidence tending to connect the defendant with the offense committed. *See* Tex. Code Crim. Proc. art. 38.14. The corroborating evidence is not sufficient if it merely shows the commission of the offense. *Id.*

To be considered an accomplice, the person's participation with the defendant must have involved some affirmative act that promotes the commission of the offense with which the defendant is charged. *See Druery*, 225 S.W.3d at 498. A person is not an accomplice witness merely because the person knew of the offense and did not disclose it. *Id.* Furthermore, the person's presence at the crime scene does not make the person an accomplice. *Id.* A person is only an accomplice if the person could be prosecuted for the offense with which the defendant is charged, or a lesser-included offense of that charge. *Id.*

A trial court should instruct the jury that a person is an accomplice witness as a matter of law if there is no doubt that the person is an accomplice. *Id.* This standard is met if the person has been charged with the same offense as the defendant or if the evidence clearly shows that the person could have been so charged. *Id.* If there is a question whether the person is an accomplice, the court should allow the jury to decide whether the person is an accomplice as a matter of fact. *Id.* at 498–99. In either case, there must be some evidence of an affirmative act on the part of the person to assist in the commission of the charged offense before an accomplice-witness instruction is required. *Id.* at 499.

Appellant argues that Vasquez was an accomplice because he drove his two male passengers to the convenience store after learning of their plan to commit a robbery. Assuming without deciding that this evidence raised a question of fact as to whether Vasquez was an accomplice, we must determine whether the trial court's error in refusing to give an accomplice-witness instruction was harmful.

8

An accomplice-witness instruction does not say that the jury should be skeptical of accomplice-witness testimony. *See Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002). Nor does it tell the jury that such testimony must receive less weight than other evidence. *Id.* The instruction merely informs the jury that it cannot use the accomplice-witness testimony unless there is also some non-accomplice evidence connecting the defendant to the offense. *Id.* Once it is determined that such non-accomplice evidence exists, the purpose of the instruction is fulfilled, and the instruction plays no further role in the jury's decision-making. *Id.* Therefore, non-accomplice evidence can render harmless a failure to submit an accomplice-witness instruction by fulfilling the purpose an accomplice-witness instruction is designed to serve. *Id.*

A harm analysis for the omission of an accomplice-witness instruction is supposed to be flexible, taking into account the existence and strength of any non-accomplice evidence and the applicable standard of harm. *Id.* We examine the strength of non-accomplice witness testimony by its reliability or believability, and by the strength of its tendency to connect the defendant to the crime. *Id.* The reliability inquiry may be satisfied if there is non-accomplice witness evidence, and there is no rational and articulable basis for disregarding the evidence or finding that it fails to connect the defendant to the offense. *Id.* at 633.

The applicable standard of harm depends upon whether the defendant preserved error by bringing the improper omission to the trial court's attention. *Id.* at 632. When the defendant has failed to preserve error, he must show egregious harm. *Id.* But when, as here, the error is properly preserved, a reversal is required if just "some harm" is shown. *Id.*

Error is harmless under the "some harm" standard when there is a substantial amount of non-accomplice evidence and the evidence of the witness's accomplice

9

status was tenuous, or barely enough to support submission of an instruction that the witness was an accomplice as a matter of fact. *Id.* at 633 (citing *Medina v. State*, 7 S.W.3d 633 (Tex. Crim. App. 1999)). The Court of Criminal Appeals has also held that error is harmless when the corroborating evidence is so strong that "it becomes implausible that a jury would fail to find that it tends to connect the accused to the commission of the charged offense." *See Casanova v. State*, 383 S.W.3d 530, 539–40 (Tex. Crim. App. 2012). At that level of strength, a reviewing court may safely conclude that the resultant harm is "purely theoretical" because, if the trial court had given the instruction, the jury would have almost certainly found that the testimony of the accomplice witness was corroborated. *Id.*

Turning first to the non-accomplice testimony, we note that there is reliable evidence connecting appellant to the commission of a capital murder. The jury heard through the testimony of a sheriff's deputy that Flores and Martinez had been drinking with Amaro in the moments before the shooting. Flores and Martinez reported that two African-American men came from behind the convenience store and attacked Amaro. Two other witnesses, Hanson and Rose, established that Young was one of the attackers. Although neither witness saw the face of the second attacker, Hanson affirmatively testified that the second attacker had a gun and that Young could not have been the shooter.

The identity of the second attacker was the only real dispute at trial, and Rose's testimony strongly suggested that the second attacker was appellant. Rose established that Young and appellant had arrived together at the convenience store, having both been passengers in Vasquez's car. Video surveillance captured a brief meeting in the parking lot between Rose, Young, and appellant. The surveillance footage also showed Young and appellant walking away from Rose towards the rear exterior of the convenience store, where their path could have taken them to

10

the area where Amaro, Flores, and Martinez had been drinking. The surveillance footage did not reveal any other person in the vicinity of Young and appellant, and there was no testimony from a non-accomplice witness that a person other than appellant had intervened or assisted Young. Considering that the shooting happened shortly after Young and appellant had left the view of the security camera, the evidence strongly supported a finding that appellant attacked Amaro with Young, and that appellant was the one who fired the gun.

Turning next to the evidence supporting an accomplice-witness instruction, we note that there is much less evidence showing that Vasquez acted with a culpable mental state. There is no affirmative evidence that Vasquez knew about the criminal intentions of his passengers when he initially encountered them on the side of the road. Vasquez testified that he learned of their plan to commit a robbery during the commute, and when he acquired this knowledge, Vasquez pleaded with his passengers to not commit a robbery at the convenience store because he knew many of the people who frequented there. The passengers responded by assuring Vasquez that they would rob someone at a different location instead. There is no evidence that Vasquez agreed to drive the passengers to that different location, or that he would share in the spoils of any robbery that the passengers actually committed.

We suppose that a jury could have rejected Vasquez's testimony and inferred an intent to assist in the commission of a robbery, but such an inference could be made only on the basis that Vasquez continued to drive his passengers to the convenience store after learning of their plan to commit a robbery. If, in the eyes of the jury, that inference were unreasonable, then Vasquez was clearly not an accomplice. *See Kunkle v. State*, 771 S.W.2d 435, 438–41 (Tex. Crim. App. 1986) (a witness was not an accomplice, despite his knowledge of a plan to commit a

11

robbery, where the witness was only a passenger in the car and he did nothing to assist or encourage his group in the commission of the robbery); *Moore v. State*, 984 S.W.2d 783, 788 (Tex. App.—Waco 1999, no pet.) (a witness who drove the defendant to the scene of a robbery was not an accomplice where the evidence showed that the witness had no prior knowledge of the defendant's plan to commit the robbery); *cf. Gross v. State*, 380 S.W.3d 181, 188–89 (Tex. Crim. App. 2012) (a driver was not criminally responsible as a party to murder where there was no evidence that the driver assisted or encouraged his passenger to kill a third party following a roadside argument).

During the trial, Hanson testified that he had a "split second" look of the shooter, who appeared to be wearing "a red jacket maybe or red sleeve." Rose, whose testimony suggested that appellant was the shooter, testified on the other hand that appellant was dressed entirely in black. We are not persuaded that Hanson's testimony provides a rational and articulable basis for disregarding Rose's corroborating testimony. Hanson's statement regarding the color of the shooter's clothing was equivocal, and it did not refute Rose's testimony that appellant was in the company of Young, the other suspected attacker. Rose's testimony still had a tendency to connect appellant to the commission of the charged offense.

Moreover, Rose was the *only* witness who identified appellant at trial. Vasquez never confirmed that appellant was the backseat passenger in his car, nor did he testify that he assisted appellant as either a principal or a party to the offense. Without testimony of that sort, Vasquez was unlike the typical accomplice witness whose testimony directly incriminates the accused. Indeed, even if there were no accomplice-witness rule, a conviction could not have been had on Vasquez's testimony alone. Rose was essential to the prosecution because he

placed appellant at the scene with the other suspected attacker, and he was the only witness who could explain the figures on the grainy surveillance footage.

The jury was apparently persuaded by the strength of Rose's testimony. Having considered the strength of that testimony ourselves and the relative weakness of Vasquez's status as an accomplice, we conclude that if an accomplice-witness instruction had been given, then the jury would have certainly found that Vasquez's testimony was corroborated. Any error in omitting the instruction was therefore harmless. *See Casanova*, 383 S.W.3d at 539–40.

## FELONY MURDER

In his next issue, appellant argues that the trial court abused its discretion by refusing to instruct the jury on the lesser-included offense of felony murder.

We apply a two-part test when determining whether a defendant is entitled to an instruction on a lesser-included offense. *See Sweed v. State*, 351 S.W.3d 63, 67 (Tex. Crim. App. 2011). We first consider whether the lesser-included offense is included within the proof necessary to establish the charged offense. *See McKithan v. State*, 324 S.W.3d 582, 587 (Tex. Crim. App. 2010). This inquiry requires that we compare the elements of the greater offense as pleaded in the indictment with the statutory elements of the lesser offense. *See Ex parte Amador*, 326 S.W.3d 202, 206 n.5 (Tex. Crim. App. 2010). If the elements of the lesser offense cannot be established by proof of the same or less than all of the facts required to establish the commission of the greater offense, then the lesser offense is not a lesser-included offense, and our analysis ends there. *See Hall v. State*, 225 S.W.3d 524, 536–37 (Tex. Crim. App. 2007).

If the lesser offense is actually a lesser-included offense, then we examine whether there is some evidence from which a rational jury could acquit the

13

defendant of the charged offense but convict him of the lesser offense. *See Guzman v. State*, 188 S.W.3d 185, 188–89 (Tex. Crim. App. 2006). The evidence must establish the lesser offense as "a valid rational alternative to the charged offense." *See Segundo v. State*, 270 S.W.3d 79, 90–91 (Tex. Crim. App. 2008). We consider all of the evidence presented at trial, regardless of its credibility or whether it is produced by the State or the defendant. *See Hayward v. State*, 158 S.W.3d 476, 478–79 (Tex. Crim. App. 2005); *Thompson v. State*, 521 S.W.2d 621, 624 (Tex. Crim. App. 1974).

A person commits a capital murder if he intentionally commits a murder in the course of committing or attempting to commit a felony. *See* Tex. Penal Code § 19.03(a)(2). A person commits a felony murder if he commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual. *Id.* § 19.02(b)(3). The only distinguishing element between these two offense is the intent to kill: capital murder requires an intentional killing, whereas felony murder does not. *See Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993). Because an offense may be a lesser-included offense if the only difference from the offense charged is that a less culpable mental state suffices to establish its commission, we conclude that felony murder is a lesser-included offense of capital murder. *See* Tex. Code Crim. Proc. art. 37.09(3); *Threadgill v. State*, 146 S.W.3d 654, 665 (Tex. Crim. App. 2004). Therefore, the first part of the test is satisfied.

Turning to the second part of the test, we must now consider whether there is any affirmative evidence from which a rational jury could have found that appellant had the intent to commit a robbery, but not the intent to cause the death of his victim. *See Fuentes v. State*, 991 S.W.2d 267, 272–73 (Tex. Crim. App.

1999). Contending that the record contains such evidence, appellant refers to testimony that Amaro was fighting with the robbers in the moments before he was shot. Appellant opines that, during the fight, there may have been a struggle over the gun, causing the gun to accidentally discharge.

Appellant's argument relies entirely on conjecture, which is insufficient to support the submission of a lesser-included offense instruction. *See Wortham v. State*, 412 S.W.3d 552, 558 (Tex. Crim. App. 2013) (holding that a defendant is not entitled to a lesser-included offense if the only evidence offered in support of the lesser charge is "mere speculation"); *Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007) ("Speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented."). There must be *affirmative evidence* showing that appellant did not intend to murder Amaro at the time the gun was fired. *Compare Ross v. State*, 861 S.W.2d 870, 872, 877 (Tex. Crim. App. 1992) (op. on reh'g) (holding that a defendant was entitled to an instruction on felony murder as a lesser-included offense of capital murder where the defendant affirmatively stated in his confession that his gun went off when he shoved his robbery victim), *with Gonzalez v. State*, 296 S.W.3d 620, 626–27 (Tex. App.—El Paso 2009, pet. ref'd) (holding that a "possibility" of an accidental discharge would not support an instruction on felony murder, without affirmative evidence showing that the shooting was unintentional). Appellant has not cited to any affirmative evidence in his brief.

The record reflects that Flores and Martinez were the only two individuals who witnessed the shooting, but neither of them testified at trial. Instead, they spoke with a sheriff's deputy, who repeated their witness statements to the jury. According the deputy, Flores and Martinez saw Amaro fighting with his attackers in the moments before they shot him. However, there was no testimony, or even a

suggestion, that Amaro had been fighting over possession of the gun, or that the gun had accidentally discharged during the struggle. We therefore conclude that there is no basis from which a jury could have rationally found that appellant intended to rob Amaro, but not murder him. *See Adanandus v. State*, 866 S.W.2d 210, 230–31 (Tex. Crim. App. 1993) (holding that a felony murder charge was not warranted, despite evidence of a struggle between the defendant and the complainant, where there was "no evidence that the parties were at any point struggling over the gun").

Appellant was not entitled to an instruction on the lesser-included offense of felony murder, and the trial court did not abuse its discretion by denying appellant's request for the submission.

## AGGRAVATED ASSAULT

In a related complaint, appellant argues that the trial court abused its discretion by refusing to instruct the jury on the lesser-included offense of aggravated assault. We review this complaint under the same standard as before, considering first whether aggravated assault is actually a lesser-included offense of capital murder, and then whether there is some evidence of probative value that supports the requested instruction.

The Court of Criminal Appeals has recognized that aggravated assault can be a lesser-included offense of capital murder. *See Dowden v. State*, 758 S.W.2d 264, 269 (Tex. Crim. App. 1988); *see also Landry v. State*, 227 S.W.3d 380, 382 (Tex. App.—Texarkana 2007, no pet.). Thus, the first part of the test is satisfied.

To satisfy the second part, there must be some evidence that appellant intended to commit an aggravated assault, but not a murder. *See Dowden*, 758 S.W.2d at 269. This burden is met if the record supports a finding that appellant

16

only intended to cause serious bodily injury, and not death. *See* Tex. Penal Code § 22.02(a) (defining aggravated assault); Tex. Code Crim. Proc. art. 37.09(2) (providing that an offense is a lesser-included offense if it can be established through a lesser showing of injury than the charged offense).

After independently poring through the record, we are not aware of any evidence that would support the submission of an instruction for aggravated assault. Appellant, likewise, has not cited to any evidence showing that, if he were one of the attackers, he only intended to cause serious bodily injury.

Appellant asserts in his brief, however, that "there was no evidence presented at trial to establish that the individual who shot and killed Raul Amaro did so with the specific intent to cause his death." This argument is unpersuasive. It is not enough to argue that there was a lack of evidence to support the greater offense. There must instead be "affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense." *See Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012); *see also Dowden*, 758 S.W.2d at 269 ("A charge on the offense of aggravated assault would be required only if testimony was *introduced* from sources indicating a lack of intent on the part of appellant to kill the deceased." (emphasis added)). Even if appellant could show that there was no evidence of an intent to kill—and he cannot, for the reasons explained above—there is still no affirmative evidence from which a jury could rationally conclude that appellant was guilty of only aggravated assault.

The trial court did not abuse its discretion by refusing to submit an instruction on the lesser-included offense of aggravated assault.

17

## CLOSING STATEMENTS

The prosecutor made the following comments in her final summation: "Please, please, go back there. Do the right thing. Show the Amaro family that there is justice in our country. Show them that we are willing to do the right thing." Appellant objected to these remarks as being outside the scope of permissible closing statements. The trial court overruled the objection, and on appeal, appellant contends that the trial court's ruling was erroneous.

Permissible closing statements generally fall within one of four areas: (1) a summation of the evidence, (2) a reasonable deduction from the evidence, (3) an answer to argument of opposing counsel, or (4) a plea for law enforcement. *See Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). A closing statement that exceeds these bounds is improper, and the trial court commits error when it (1) overrules an objection to the statement, (2) refuses an instruction to disregard the statement after sustaining an objection to the statement, or (3) fails to grant a mistrial necessitated because of the statement. *See Watts v. State*, 371 S.W.3d 448, 457 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

Appellant contends that the prosecutor encouraged the jurors "to place themselves in the shoes of the victim's family," and that her closing statement was therefore improper. We disagree. The prosecutor did not ask the jurors to render a verdict based on what the Amaro family desired. Instead, she urged them to convict appellant because the evidence supported a verdict of guilty. The prosecutor's closing statement qualified as a plea for law enforcement, and the trial court did not abuse its discretion by overruling the objection. *Cf. Ayala v. State*, 267 S.W.3d 428, 435–36 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (closing statement was a proper plea for law enforcement when the prosecutor said, "I hope you also think of Carmen, and her children, and Juan, and the justice

they're entitled to. . . . And on this day, when you're in the 12 seats, I ask you to deliver them that justice. . . . Convict that man of the offense that he deserves to be convicted of, capital murder. There's nothing, nothing else that is fair and right in this case."); *Smith v. State*, 846 S.W.2d 515, 517–18 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd) (closing statement was a proper plea for law enforcement when the prosecutor encouraged the jury to "do the right thing" before invoking concerns about crime on the streets and the impact of that crime on members of the community).

## CONCLUSION

Appellant's five issues are overruled and the judgment of the trial court is affirmed.

/s/    Tracy Christopher
       Justice

Panel consists of Justices Christopher, Donovan, and Wise.
Do Not Publish — Tex. R. App. P. 47.2(b).